**SHAKESPEARE COMPANY, Plaintiff,**

v.

**SILSTAR CORPORATION OF AMERICA, INC., Defendant.**

**Civ. A. No. 3:90–1695–19.**

United States District Court, D. South Carolina, Columbia Division.

Nov. 17, 1995.

As Corrected Jan. 2, 1996.

Frank Rogers Ellerbe, III and James Moncrief Brailsford, III, of Robinson, McFadden & Moore, Columbia, South Carolina, for Plaintiff.

William C. Cleveland, Charleston, South Carolina, for Defendant.

### ORDER

SHEDD, District Judge.

This trademark infringement and unfair competition case, which involves Silstar Corporation of America, Inc.'s attempt to market a fishing rod with a color configuration (*i.e.,* a clear tip on an opaque fishing rod base) similar to Shakespeare Company's federally registered trademark for that color configuration, is before the Court on remand from the United States Court of Appeals for the Fourth Circuit. Previously, the Court issued findings of fact and conclusions of law, entered judgment in favor of Silstar on Shakespeare's claims, and ordered the cancellation of Shakespeare's trademark. *See* 802 F.Supp. 1386 (D.S.C.1992) (*"Shakespeare I"*). On appeal, a divided panel of the Fourth Circuit reversed the cancellation Order and remanded this case with instructions for further proceedings. *See* 9 F.3d 1091 (4th Cir.1993) (*"Shakespeare II"*). Thereafter, the Fourth Circuit denied Silstar's petition for rehearing, and the Supreme Court denied Silstar's petition for certiorari. *See* —— U.S. ——, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994).

The Court has now given further consideration to the parties' claims and defenses based on the record presented at trial, and is entering this Order to supplement the findings of fact and conclusions of law set forth in *Shakespeare I*.[1] For the reasons set forth below, the Court concludes that Silstar is entitled to prevail on Shakespeare's claims because Shakespeare has failed to establish that Silstar's use of the clear tip on its fishing rods will create a likelihood of confusion and, alternatively, because Silstar has established its fair-use defense. The Court further concludes that Silstar has failed to establish its unclean hands defense or its counterclaims.

### I. THE SCOPE OF THE SHAKESPEARE II MANDATE

A preliminary matter which the Court must resolve is a determination of what issues remain viable after *Shakespeare II.* Following the remand of this case the Court ordered the parties to brief all of the issues not previously resolved by this Court and indicated that it would consider the parties' "claims and defenses" on remand.[2] Shakespeare has taken exception to the Court's Order, arguing that the law of the case doctrine limits the issues which the Court may now consider. In this regard, Shakespeare asserts that "the scope of the Fourth Circuit's mandate is very narrow in that it directs the review of the very specific issue of likelihood of confusion," and the Court, by seeking briefs on the parties' "claims and defenses," has taken "an overly-broad [sic] interpretation of the Fourth Circuit's mandate...." *Shakespeare Nov. 22, 1994, Brief* ("Shakespeare Brief"), at 1. Shakespeare further asserts:

*A Comment On The Federal Registration Of Functional Designs After Shakespeare Co. v. Silstar Corp. Of America,* 51 Wash. & Lee L.Rev. 1257 (1994).

1. The Court hereby incorporates all prior findings of fact and conclusions of law which are not inconsistent with *Shakespeare II,* and will restate those findings or conclusions only where necessary for purposes of this Order. Reference should be made to *Shakespeare I* and *Shakespeare II* for a more thorough summary of this litigation. *See generally* M. Pollack, *Unconstitutional Incontestability? The Intersection Of The Intellectual Property And Commerce Clauses Of The Constitution: Beyond A Critique Of Shakespeare Co. v. Silstar Corp.,* 18 Sea.U.L.Rev. 259 (1995); T.H. Davis, *Of "Ugly Stiks" And Uglier Case Law:*

2. While the Court found Silstar's brief to be somewhat helpful, Shakespeare's brief not only did not contain the level of specificity sought by the Court, but Shakespeare also needlessly, and unpersuasively, attempted to argue against several findings of fact which the Court had already indicated would stand.

[A]ssuming that Shakespeare prevails on its likelihood of confusion claim ... it would be contrary to the law of this case for this court to consider Silstar's other "defenses." Indeed, for this court to entertain Silstar's defenses for the purpose of invalidating Shakespeare's mark would be in direct conflict with the Fourth Circuit's holding that Shakespeare's mark is "valid as a matter of law." ... Therefore, the only issue before this court is the likelihood of confusion between Shakespeare's "clear tip" configuration and Silstar's infringing "clear tip," and this court lacks jurisdiction to review Silstar's additional defenses.

*Id.* at 2. Resolution of this important threshold issue requires an analysis of both the law of the case doctrine and the prior proceedings in this case.

### A. The Law Of The Case Doctrine (The Mandate Rule)

■ "The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Refin. & M. Co.,* 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). "[L]aw of the case is an amorphous concept," *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); which, being "a rule of discretion and not a jurisdictional requirement," *Smith v. Bounds,* 813 F.2d 1299, 1304 (4th Cir.1987), *cert. denied,* 488 U.S. 869, 109 S.Ct. 176, 102 L.Ed.2d 146 (1988); "is not absolute nor inflexible." *Capital Invs. Co. v. Executors of Estate of Morrison,* 584 F.2d 652, 654 (4th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). While "at least four distinctive sets of problems are caught up in law of the case terminology," 18 C.A. Wright, A.R. Miller, & E.H. Cooper, *Federal Practice & Procedure,* § 4478 at 788 (1981); the specific form of law of the case relied upon here by Shakespeare is the "mandate rule."

■ In federal court, the mandate ordinarily consists of a certified copy of the appellate judgment, a copy of the appellate

opinion (if any), and any direction as to costs. *Fed.R.App. P.* 41(a). As the "'official mode of communicating [the] judgment of [an] appellate court to [a] lower court, [thereby] directing action to be taken or disposition to be made of [the] cause by [the] trial court,'" *Amico v. New Castle County,* 654 F.Supp. 982, 991 n. 6 (D.Del.1987) (citation omitted); "[t]he mandate is a tool used to ensure that institutional values are maintained and that the allocation of authority and responsibility remains consistent with the design established under the law of our form of government." *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1511 (11th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988). Under the mandate rule, "a lower court generally is 'bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest.'" *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993) (citations omitted). However, "[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues," *Sprague v. Ticonic Nat'l Bk.,* 307 U.S. 161, 168, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939); so long as consideration of those issues is consistent with the mandate. *Stamper v. Baskerville,* 724 F.2d 1106, 1108 (4th Cir. 1984).

■ In applying the mandate rule, "it is critical to determine what issues were actually decided [by the appellate court] in order to define what is the 'law' of the case." *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 533 (7th Cir.1982), *cert. denied,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983). Because the lower court is generally duty bound to "implement both the letter and spirit of the ... mandate, taking into account [the] opinion and the circumstances it embraces," *Bell,* 5 F.3d at 66 (internal quotation marks deleted); "[d]etermining the scope of the mandate can present problems with interpretation." *Litman,* 825 F.2d at 1511. Where, as here, the appellate judgment is silent with respect to the manner in which the lower court should proceed on remand,[3] determination of

---

**3.** The appellate judgment in this case states: "This case was heard by the Court on the record

the scope of the mandate "requires a careful reading of the [appellate] Court's opinion," *Gertz,* 680 F.2d at 533; which serves as "a statement of the reasons on which the judgment rests." *Rogers v. Hill,* 289 U.S. 582, 587, 53 S.Ct. 731, 734, 77 L.Ed. 1385 (1933). The opinion must be read as a whole, *Harris v. Sentry Title Co.,* 806 F.2d 1278, 1280 (5th Cir.), *cert. denied,* 484 U.S. 818, 108 S.Ct. 74, 98 L.Ed.2d 37 (1987); including any concurring and dissenting opinions, *Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.), *cert. denied,* 506 U.S. 841, 113 S.Ct. 125, 121 L.Ed.2d 80 (1992); and "in light of the facts of the case under discussion." *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). "Different sections of an opinion should be read as consistent with each other," *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 585 (1st Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979); and "[p]arts thereof should not be read out of context." *Sterling Drug, Inc. v. Yarrow,* 408 F.2d 978, 991 (8th Cir.1969). Any "observations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations." *Gertz,* 680 F.2d at 533.

### B. Summary Of Shakespeare I And Shakespeare II

With these principles in mind, the Court now turns to a brief summary of this litigation. This action arises as a result of Silstar's attempt to market a fishing rod known as the "Silstar Power Tip Crystal," which has a color configuration (*i.e.,* a clear tip on an opaque rod base) similar to that protected by a federally registered trademark owned by Shakespeare and used on Shakespeare's "Ugly Stik" line of rods. Shakespeare, which seeks injunctive relief, asserts three causes of action: (1) trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law trademark infringement and unfair competition under South Carolina law.

Silstar has filed an Amended Answer and Counterclaim ("Answer"), in which it asserts in defense that its use of the clear tip is a "fair use," *Answer,* at 2–3; and that Shakespeare is precluded from enforcing any rights under the trademark based on the defense of unclean hands. *Id.* at 3–4. Apart from these defenses Silstar also asserts claims for damages and cancellation of Shakespeare's trademark based on its contention that Shakespeare's trademark is invalid because the clear tip is both a functional feature and generic of the type of fishing rods at issue, *id.* at 5–6; and because the trademark simply consists of two contrasting colors. *Id.* at 7. Silstar further contends that Shakespeare, by allowing third-party manufacturers to sell customized rods on its clear-tipped rod blanks, has not only misrepresented the source of some clear-tipped rods, *id.;* but has also destroyed any secondary meaning which the mark may have had. *Id.* at 6.

In *Shakespeare I* the Court concluded *inter alia* that Silstar's use of the clear tip on the Silstar Power Tip Crystal Rod is a fair use and, therefore, Silstar must prevail on Shakespeare's federal trademark infringement claim. 802 F.Supp. at 1395–97. The Court based this conclusion on its findings that Shakespeare's trademark is descriptive, Silstar's use of the clear tip is merely descriptive and not as a trademark, and Silstar is using the clear tip fairly and in good faith. *Id.* at 1396. The Court also concluded that the clear tip is a functional feature of the fishing rods at issue and, consequently, Shakespeare's trademark should be cancelled. *Id.* at 1397–99. The Court further concluded that Silstar's fair-use defense and the functionality of the trademark defeated Shakespeare's federal and state unfair competition claims, and its state trademark infringement claim. *Id.* at 1399. For these reasons the Court ordered that judgment be entered in favor of Silstar on each of Shakespeare's claims and that the Commissioner of the Patent and Trademark Office ("PTO") cancel Shakespeare's trademark. The Court specifically declined to address the other is-

---

from the District Court and was argued by counsel. The Court reverses the judgment of the

District Court."

sues that Silstar raised because the fair use and functionality issues were dispositive both as to Shakespeare's claims and the cancellation issue. *See id.* at 1399 n. 11.

In *Shakespeare II* the Fourth Circuit, in a 2–1 panel decision, reversed, concluding that this Court lacked the authority to cancel Shakespeare's trademark on the ground of functionality because functionality is not a ground for cancellation under 15 U.S.C. § 1064. 9 F.3d at 1094–99.[4] Although the panel majority did not discuss the merits of any other substantive issues, it nevertheless summarized its decision as follows:

> In conclusion, we hold that the district court erred in canceling, pursuant to 15 U.S.C. § 1119, the trademark held by Shakespeare on the grounds that it is functional, because that is not an authorized ground for cancellation under § 1064. Since no other ground enumerated under § 1064 was alleged by Silstar, the mark is valid as a matter of law. We therefore reverse the district court and remand for further consideration of Shakespeare's statutory and common law infringement and unfair competition claims. We further instruct the district court that any inquiry into an alleged "fair use" must be accompanied by an analysis of the likelihood of confusion among consumers that may be created by Silstar's use of the clear tip.

9 F.3d at 1099.

There are two aspects of the panel majority's mandate over which there seems to be no dispute. First, the panel majority has laid to rest Silstar's attempt to cancel Shakespeare's trademark on the grounds of functionality, and that matter—*i.e.*, cancellation based on grounds of functionality—clearly is no longer before this Court. Second, the panel majority has expressly directed this

Court to consider the issue of likelihood of confusion when determining whether Silstar has established its fair-use defense.[5] While there is no dispute as to those aspects of the mandate, Shakespeare asserts that the mandate is much broader.

Relying on the panel majority's statement that Shakespeare's trademark is "valid as a matter of law" and its statement remanding this case for "further consideration of Shakespeare's statutory and common law infringement and unfair competition claims," Shakespeare argues that "the only issue before this court is the likelihood of confusion between Shakespeare's 'clear tip' configuration and Silstar's infringing 'clear tip,' and this court lacks jurisdiction to review Silstar's additional defenses." *Shakespeare Brief,* at 2. Stated differently, Shakespeare contends that the mandate rule forecloses this Court from considering Silstar's unclean hands defense and all of Silstar's counterclaims. While Shakespeare's position is arguably supportable by a literal, and isolated, reading of the language of the *Shakespeare II* Opinion in which the panel majority stated its conclusions, *see* 9 F.3d at 1099; it is clear that Shakespeare's position cannot be sustained when the *Shakespeare II* Opinion is read in its entirety and in context with the issues presented in this litigation.

### C. The Mandate Rule Does Not Preclude The Court From Considering Silstar's Unclean Hands Defense And Other Counterclaims

As the Court noted both in *Shakespeare I, see* 802 F.Supp. at 1389; and again above, Silstar has asserted multiple defenses and counterclaims in this action. In doing so, Silstar not only seeks to defend against Shakespeare's claims, but it also seeks to have Shakespeare's trademark cancelled. As

---

4. While the panel majority did not comment on the propriety of any of the *Shakespeare I* findings of fact, including those which supported the determination of functionality and fair use, Judge Niemeyer stated in his dissenting opinion that the *Shakespeare I* findings of fact "are amply supported by the evidence in the record," *id.* at 1100; that the panel majority appeared to "embrace" this Court's conclusion as to functionality, *id.* at 1106; and that "[i]t is uncontrovertible that [the clear tip] is nothing more than a manifesta-

tion of the product's functional design, as found by the district court." *Id.* at 1105.

5. In *Shakespeare I,* the Court did not determine whether Shakespeare had established likelihood of confusion, concluding instead that "[t]he fair use defense is applicable even where a plaintiff can establish a likelihood of confusion since '[t]o hold otherwise would effectively viscerate the fair-use defense.'" 802 F.Supp. at 1397 n. 7 (citation omitted).

noted above, because of the Court's conclusions in *Shakespeare I* concerning the functionality and fair-use issues, the Court expressly declined to rule on Silstar's unclean hands defense or any counterclaims other than the functionality counterclaim.[6] In *Shakespeare II*, both the panel majority and the dissent focused their analyses exclusively on one legal issue: whether Shakespeare's trademark may now be invalidated on grounds of functionality. Apart from the panel majority's instruction that this Court must consider the likelihood of confusion in the fair-use inquiry, neither the panel majority nor the dissent addressed in a substantive fashion the merits of Silstar's unclean hands defense or other counterclaims. Therefore, a fair reading of *Shakespeare II*, in proper context and in its entirety, indicates that the scope of the mandate is not as broad as Shakespeare argues.

The Court's decision is supported by *Bryant v. Partenreederei–Ernest Russ*, 352 F.2d 614 (4th Cir.1965). In *Bryant*, the district court originally entered an order exonerating the defendant of liability. On appeal, the Fourth Circuit reversed and remanded the case to the district court "'with directions to enter judgment for the plaintiff ... in an amount to be determined by the said district court.'" *Id.* at 615 (citation omitted). On remand, the district court found, based on the evidence already in the record, that the plaintiff's damages were $24,000, but because the plaintiff was 50% negligent, the judgment for the plaintiff would be limited to $12,000. The plaintiff then appealed, contending *inter alia* that "the specific remand by [the Fourth Circuit]

on the first appeal precluded the lower court from considering the issue of contributory negligence...." *Id.,* The Fourth Circuit disagreed:

> When this court remanded the case for the express purpose of determining damages at that stage of the proceedings the question of Bryant's contribution to his injuries by his own negligence, although raised, had not been resolved. The District Court in its earlier order had specifically refrained from ruling on the damages issue believing such a ruling unnecessary.... This court, as is clear from its opinion in 330 F.2d [185] at 185, did not consider or discuss this issue. Under these circumstances we think the issue of contributory negligence was properly considered by the District Court in determining and awarding damages.

352 F.2d at 615. *See also Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404–05 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 64, 126 L.Ed.2d 34 (1993) (remand with instructions for district court "to order an accounting and to award damages and other relief as appropriate" did not preclude district court from determining that an accounting was inappropriate under the circumstances); *Publishers Resource, Inc. v. Walker–Davis Pubs., Inc.*, 762 F.2d 557, 559 (7th Cir.1985) (remand "for a new trial on the issue of damages" did not preclude district court from deciding damages issue on summary judgment motion); *United States v. Curtis*, 683 F.2d 769, 771–72 (3d Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982) (remand "for a new trial"

---

6. The Fourth Circuit has expressly disapproved of the use of alternative holdings. *See Karsten v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir.1994). An unintentional, but natural, result of this Court's decision not to rule on any other issues was to make them generally inappropriate for initial consideration at the appellate level. *See, e.g., United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714–15, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963) ("the reviewing function is one ordinarily limited to consideration of the decision of the ... court below and of the evidence on which it is based"); *Hettleman v. Bergland*, 642 F.2d 63, 68 (4th Cir. 1981) ("The court of appeals ... is in no position

to act on issues that the district court has expressly left undecided"); *United States v. Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir.1980), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981) ("Ordinarily ... we do not pass on questions that were not ... considered by the district court"); *see also Lewis v. Bloomsburg Mills, Inc.*, 773 F.2d 561, 577 (4th Cir.1985) (noting the "heightened responsibility on the part of the courts of appeals to insist, even at the risk of delay, on having the factfinding process carried out properly at the level intended rather than to assume, even indirectly, a factfinding role").

did not preclude district court from dismissing case based on double jeopardy grounds).[7]

### D. Summary Of The Scope Of The Mandate

In summary with respect to the scope of the mandate, the Court concludes: (1) the issue of functionality as a ground for cancellation of Shakespeare's trademark is no longer before the Court;[8] (2) the Court must consider whether Shakespeare has established a likelihood of confusion among consumers in the analysis of Silstar's fair-use defense; (3) the Court is free to consider Silstar's unclean hands defense and all counterclaims other than the functionality counterclaim; and (4) Shakespeare's trademark is, at this juncture, "valid as a matter of law" only insofar as it has been challenged on grounds of functionality. The Court now turns to the merits of this action.[9]

7. Under Shakespeare's reading of the mandate, Silstar, by virtue of two conclusory sentences in the *Shakespeare II* Opinion, would now be deprived of the opportunity to have *any court* consider and weigh the evidence presented at trial and determine whether the unclean hands defense or any counterclaims have merit. Because the right to due process entails the right "to fully and fairly litigate each issue," *duPont v. Southern Nat'l Bank of Houston, Tex.*, 771 F.2d 874, 880 (5th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986); including every available defense, *Lindsey v. Normet*, 405 U.S. 56, 66, 92 S.Ct. 862, 870, 31 L.Ed.2d 36 (1972); and requires that "[f]indings based on the evidence must embrace the basic facts which are needed to sustain the order," *Morgan v. United States*, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936); foreclosing Silstar from judicial consideration of its unclean hands defense and other counterclaims at this stage of the proceedings, without allowing it to have a determination on them, would likely violate Silstar's right to due process.

To the extent that Shakespeare draws support for its position from the panel majority's statement that its trademark is "valid as a matter of law," the Court notes that Silstar's unclean hands defense, if established, would not invalidate Shakespeare's trademark since it is an equitable defense which, like the fair-use defense, arises under 15 U.S.C. § 1115(b), and therefore is "not [a] substantive rule[ ] of law which go[es] to the validity . . . of an incontestable mark." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 199 n. 6, 105 S.Ct. 658, 664 n. 6, 83 L.Ed.2d 582 (1985). Therefore, consideration of Silstar's unclean hands defense would not conflict with the holding that Shakespeare's trademark is "valid as a matter of law." Moreover, although the panel majority stated that Shakespeare's trademark "is valid as a matter of law," the Court notes, with respect, that this statement is based on an erroneous premise. When read in context, the panel majority stated in pertinent part that this Court erred in canceling Shakespeare's trademark on the grounds that it is functional because functionality is not an authorized ground for cancellation under 15 U.S.C. § 1064, and *"[s]ince no other ground enumerated under § 1064 was alleged by Silstar*, the mark is valid as a matter of law." 9 F.3d at 1099 (emphasis added). Contrary to the highlighted portion of the *Shakespeare II* Opinion, Silstar in fact alleged genericness and source misrepresentation as grounds for cancellation, *see Answer*, at 6-7; a fact which the panel majority partially recognized, *see* 9 F.3d at 1093; and both of these are enumerated grounds for trademark cancellation at any time under § 1064(3). *See Shakespeare II*, 9 F.3d at 1095 n. 4.

8. As Judge Niemeyer noted in his *Shakespeare II* dissent, the panel majority appears to "embrace" the conclusion that the trademark is functional, "concluding only that functionality is not a statutory ground for *cancellation*." 9 F.3d at 1106 (emphasis in original). While the Court respects and adheres to the determination that the trademark may not be cancelled because of functionality, the Court does not believe that such a determination renders functionality irrelevant, especially in light of the issues in this case. As will be shown below, functionality is directly relevant to several issues which are wholly unrelated to whether Shakespeare's trademark should be cancelled and, therefore, it must now be considered. *See Fed.R.Evid.* 402 ("All relevant evidence is admissible"); *Morton–Norwich Prods., Inc. v. S.C. Johnson & Son, Inc.*, 531 F.2d 561, 562 (Ct.Cust. & Pat.App.1976) ("All relevant evidence must be considered in determining likelihood of confusion"); *American Hosp. Supp. Corp. v. Fisher Scient. Co.*, 713 F.Supp. 1108, 1110 (N.D.Ill.1989) (noting relevance of functionality in that case as to trademark issues other than validity).

9. "The mandate rule . . . is not without exception when a lower court is faced with extraordinary circumstances," and, therefore, "[e]ven though the mandate of an appellate court may 'not contemplate resurrecting an issue on remand, the trial court may still possess some limited discretion to reopen the issue in very special situations,'" one of which is when the trial court finds that a "blatant error" is present in the prior decision and that this error will, if not corrected, result in a "serious injustice." *Bell*, 5 F.3d at 67 (citations omitted). To the extent that the Court has incorrectly interpreted the mandate here, this case would appear to present an "extraordinary circumstance" which would justify departure from the mandate.

## II. LIKELIHOOD OF CONFUSION AND THE FAIR–USE DEFENSE

 "In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 930 (4th Cir.1995); *see also Shakespeare I,* 802 F.Supp. at 1394. While it is clear from the foregoing that there are many issues which remain unresolved—including the validity *vel non* of Shakespeare's trademark (except as to functionality), *see supra* note 7—the Court finds it appropriate to move directly to a determination of whether Shakespeare has established a likelihood of confusion [10] and, if so, whether Silstar may prevail on its fair-use defense. Resolution of these issues at this juncture is appropriate because of (1) the Court's prior findings and conclusion with respect to the fair-use defense and (2) the panel majority's express instruction that likelihood of confusion must be considered with the fair-use defense.

### A. Likelihood Of Confusion

### 1. The Fourth Circuit's Standard For Determining Likelihood Of Confusion

 Under the Lanham Act and trademark law generally, the owner of a mark has "the right to preclude a use by a junior owner of a mark that causes or is likely to cause confusion, cause mistake, or deceive an appreciable number of typical consumers into believing that some sponsorship, association, affiliation, connection, or endorsement exists between the owner of the senior mark and the owner of the junior mark." *Quality Inns Int'l, Inc. v. McDonald's Corp.,* 695 F.Supp. 198, 209 (D.Md. 1988). As the term "likelihood of confusion" suggests, while it is not necessary for a trademark owner to prove that the defen-

dant's use of a colorable imitation of its trademark has or will create actual confusion, it is not sufficient for the trademark owner to show a mere possibility of confusion, *AMP, Inc. v. Foy,* 540 F.2d 1181, 1186 (4th Cir. 1976); or mere resemblance of the marks. *Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d 1245, 1252 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970). Instead, the trademark owner must show a probability of confusion. *Lacoste Alligator, S.A. v. Bluestein's Men's Wear, Inc.,* 569 F.Supp. 491, 497 (D.S.C. 1983). Moreover, as noted above, this showing must be made with respect to an *appreciable* number of typical consumers, *Quality Inns, Int'l,* 695 F.Supp. at 209; who exercise "due care in the market place." *Dwight S. Williams Co. v. Lykens Hosiery Mills, Inc.,* 233 F.2d 398, 402 (4th Cir.), *cert. denied,* 352 U.S. 840, 77 S.Ct. 61, 1 L.Ed.2d 56 (1956). "[O]ccasional cases of confusion or thoughtless errors by very inattentive purchasers are of little significance." *Pennzoil Co. v. Crown Central Petrol. Corp.,* 50 F.Supp. 891, 900 (D.Md.1943), *aff'd and opinion adopted,* 140 F.2d 387 (4th Cir.), *cert. denied,* 322 U.S. 750, 64 S.Ct. 1261, 88 L.Ed. 1581 (1944).

 Because likelihood of confusion "depends on 'varying human reactions to situations incapable of exact appraisement,' ... [it] is an 'inherently factual' issue that depends on the facts and circumstances in each case." *Lone Star Steakhouse,* 43 F.3d at 933 (citations omitted). In determining likelihood of confusion, "[a] side-by-side analysis of the marks is not the proper test." *Holiday Inns, Inc. v. Holiday Inn,* 364 F.Supp. 775, 782–83 (D.S.C.1973), *aff'd,* 182 U.S.P.Q. 129, 498 F.2d 1397 (4th Cir.1974). Instead, the analysis must focus on whether "the use [of the mark] in its entirety creates a likelihood of confusion," and courts making that determination "must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer; ... look[ing] not only at the portion of the [product] that duplicates the [trademark], but at

---

**10.** Although Shakespeare's trademark has become incontestable under 15 U.S.C. § 1065; incontestability affects only the validity of a trademark and does not establish the likelihood of

confusion necessary to warrant protection from infringement. *Lone Star Steakhouse,* 43 F.3d at 935.

the [product] as a whole as sold in the marketplace." *Anheuser–Busch, Inc. v. L & L Wings, Inc.,* 962 F.2d 316, 319 (4th Cir.), *cert. denied,* 506 U.S. 872, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992).

 The Fourth Circuit has observed that " 'every product has its own separate threshold for confusion of origin.' " *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 127 (4th Cir.1990) (citation omitted). In this Circuit, seven factors taken from the Opinion in *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984), are commonly set forth as "generally" comprising the test of whether likelihood of confusion has been established. These factors—the *"Pizzeria Uno* factors"—are:

(1) the strength or distinctiveness of the mark;

(2) the similarity of the two marks;

(3) the similarity of the goods and services that the marks identify;

(4) the similarity of the facilities that the two parties use in their businesses;

(5) the similarity of the advertising the two parties use;

(6) the defendant's intent; and

(7) actual confusion.

The Fourth Circuit listed these factors as comprising the test for likelihood of confusion most recently in *Lone Star Steakhouse. See* 43 F.3d at 933. While the *Pizzeria Uno* factors are commonly utilized in this Circuit, they

> are not meant to be a 'rigid formula' for infringement. Rather, the *Pizzeria Uno* factors are only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion. As this circuit recognized in *Pizzeria Uno,* not all of the factors are of equal importance, nor are they always relevant in any given case.

*Anheuser–Busch, Inc.,* 962 F.2d at 320 (citations omitted). Moreover, the *Pizzeria Uno* factors are not exhaustive or exclusive, *Quality Inns Int'l,* 695 F.Supp. at 217; and they are not always relied upon by the Fourth Circuit itself.

 For example, in *Perini Corp.,* a panel of the Fourth Circuit listed the following factors, some of which coincide with the *Pizzeria Uno* factors, as comprising the test for likelihood of confusion:

(1) the strength of the plaintiff's mark;

(2) the degree of similarity between the marks;

(3) the proximity of the products;

(4) the likelihood that the prior owner will bridge the gap;

(5) actual confusion;

(6) the defendant's intent in adopting the mark;

(7) the quality of the defendant's product; and

(8) the sophistication of the buyers.

915 F.2d at 127.[11] In other cases, the Fourth Circuit has also considered factors other than the *Pizzeria Uno* factors in determining likelihood of confusion. *See, e.g., Dayton Progress Corp. v. Lane Punch Corp.,* 917 F.2d 836, 839–40 (4th Cir.1990) (discussing sophistication of buyers); *Seidelmann Yachts, Inc. v. Pace Yacht Corp.,* 13 U.S.P.Q.2d 2025, 2028, 898 F.2d 147 (4th Cir.1990) (listing the "high cost of the product and the sophistication of the purchaser" as being "just a few of the elements" to be considered along with the *Pizzeria Uno* factors); *Communications Satellite Corp.,* 429 F.2d at 1252 (discussing sophistication of purchasers); *Durox Co. v. Duron Paint Mfg. Co.,* 320 F.2d 882, 885 (4th Cir.1963) (noting that district court correctly considered *inter alia* "the type of persons who purchase the goods (whether sophisticated and knowledgeable)").[12]

---

**11.** While the *Perini Corp.* panel cited *Pizzeria Uno,* it nevertheless listed these factors, which it derived from *Polarad Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *See Perini Corp.,* 915 F.2d at 127.

**12.** The Court recognizes that the United States Patent Quarterly (U.S.P.Q.) is not an official re-

porter and that opinions published solely therein are those which are not officially published. While citation to unpublished opinions, which are not binding precedent, is generally disfavored, such opinions may be cited for precedential value if no published opinion would serve as well, *Internal Operating Procedure* 36.6 (4th Cir.); or otherwise for the "weight they generate by the persuasiveness of their reasoning." *Hup-*

■ It therefore is proper for the Court, in assessing likelihood of confusion, to consider not only the *Pizzeria Uno* factors, but also any additional factors which are relevant, including those listed in *Perini Corp.* and the other cases noted above. *See Quality Inns Int'l,* 695 F.Supp. at 217 (*Pizzeria Uno* and *Perini Corp.* lists "focus logically an inquiry that must be tailored to the factual circumstances of each case").[13] In doing so, the Court is mindful that while, as noted, all of the factors may not be relevant or of equal importance, "all relevant factors should be considered in an over-all perspective," *Durox Co.,* 320 F.2d at 885; and ordinarily no one factor is *per se* dispositive. *Perini Corp.,* 915 F.2d at 127. However, a single factor may, in an appropriate case, be dispositive. *Anheuser–Busch, Inc.,* 962 F.2d at 320; *see also Kellogg Co. v. Pack'em Enters.,* 951 F.2d 330, 333 (Fed.Cir.1991).

## 2. Shakespeare Is Not Entitled To A Presumption Of Likelihood Of Confusion

■ Before considering the pertinent likelihood of confusion factors, the Court must determine whether Shakespeare is entitled to a rebuttable presumption of likelihood of confusion based on Silstar's alleged intentional copying of Shakespeare's trademark. Shakespeare argues, almost as an afterthought, that Silstar intentionally copied its trademark and, therefore, such a presumption arises in this case. *See Shakespeare Brief,* at 9–10.

On this point, the Fourth Circuit has stated:

> When a newcomer to the market copies a competitor's trade dress, its intent must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the same, or originates from the same source as the product whose trade dress was copied. Logic requires … that from such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion. It would be inconsistent not to require one who tries to deceive customers to prove that they have not been deceived.

*Osem Food Indus. v. Sherwood Foods, Inc.,* 917 F.2d 161, 165 (4th Cir.1990).[14] The *Osem Food* court instructed that "[t]he proper course of action in a case … where the newcomer copied its competitor's trade dress is to apply the presumption and consider … whether the newcomer presented sufficient evidence to rebut the presumption." *Id.* at 165.

While *Osem Food* indicates that a presumption of likelihood of confusion arises where the defendant has intentionally copied the plaintiff's trademark, the Court concludes that the presumption is inapplicable in this case. As the Fourth Circuit has noted in a related context, "the relevant intent in trademark cases is not merely an intent to profit, … but an 'intent to confuse the buying public.'" *Anheuser–Busch, Inc.,* 962 F.2d at 321 (citation omitted). A fair reading of the law in this Circuit indicates that a presump-

---

*man v. Cook,* 640 F.2d 497, 501 & n. 7 (4th Cir.1981). The Court notes that both parties have cited to cases published only in the U.S.P.Q., and the Fourth Circuit has also occasionally cited to opinions published solely therein. *See, e.g., Lone Star Steakhouse,* 43 F.3d at 930 n. 10, 931, 937.

**13.** Because Shakespeare's trademark represents the natural result of the manufacturing process and a functional attribute of the type of fishing rods at issue, the Court is faced with a situation which differs from the typical trademark case (*e.g.,* where the marks involve brand names). The Court has attempted, as set forth below, to tailor the inquiry accordingly.

**14.** *See also Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) ("Where … one produces counterfeit goods in an apparent

attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion"); *AMP, Inc.,* 540 F.2d at 1186 ("intent to exploit the good will created by an already registered trademark creates a presumption of a likelihood to confuse"); *cf. Allen v. Standard Crank. & Hydraul. Co.,* 323 F.2d 29, 36 (4th Cir.1963) ("When the defendant is fully informed of all the facts at the time he adopts the mark … and the question before the Court is the likelihood of confusion of the goods of the competitors in the minds of their purchasers, an apparent motive of the junior party to create confusion and to give to his goods a superficial appearance of being those of the senior party is properly considered in disposing of the question").

tion of likelihood of confusion arises only from "intent to exploit the good will created by an already registered trademark," and mere "knowledge of prior use does not establish intent...." *AMP, Inc.*, 540 F.2d at 1186.[15] This also appears to be the general rule:

> A likelihood of confusion should not be inferred from proof that the actor intentionally copied the other's designation if the actor acted in good faith under circumstances that do not otherwise indicate an intent to cause confusion or to deceive.

*Restatement (Third) of Unfair Competition* ("*Restatement*"), § 22(2) (1995).[16]

Although it is clear that Silstar had knowledge of, and essentially copied, Shakespeare's trademark when it began its attempt to market the Power Tip Crystal Rod, it is equally clear from the evidence presented at trial that Silstar's intent was not, and is not, to capitalize on, or otherwise exploit, Shakespeare's trademark. As the Court has previously found:

> Silstar desires to use the clear tip on the Power Tip Crystal rods in order that consumers can see and understand the qualities the rod possesses. Silstar does not seek to use the clear tip as a source of origin of the rods.

. . . . .

> It is evident that Silstar does not seek to use the clear tip on the Power Tip Crystal rod in a trademark sense, that is "to identify and distinguish" the Power Tip Crystal rod from those manufactured or sold by others or "to indicate the source" of the Power Tip Crystal. Instead, whatever attention is drawn to the clear tip on the

> Power Tip Crystal rod serves merely to inform a prospective purchaser of the components and attributes of the rod.

. . . . .

> Silstar seeks to use the clear tip only in its descriptive sense and the evidence establishes that the clear tip is without question the most effective means to market the rods in this descriptive sense. There is no indication that Silstar's attempt to utilize the clear tip is unfair or in bad faith.

> In this case, there is no alternative design to Shakespeare's mark which would be as effective in communicating to consumers the fact that the rod is made of a graphite base and a solid fiberglass tip since the clear tip and the opaque base represent the natural color of the graphite and fiberglass resin which compose the rod.

*Shakespeare I*, 802 F.Supp. at 1393, 1396, 1398 (citations omitted).

The evidence thus establishes that in attempting to use the clear tip on its fishing rods, Silstar merely seeks to reproduce and utilize a functional attribute, which is unquestionably a legitimate activity. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 164, 109 S.Ct. 971, 984, 103 L.Ed.2d 118 (1989) (" '[r]eproduction of a functional attribute is legitimate competitive activity' " (citation omitted)); *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 857 n. 20, 102 S.Ct. 2182, 2190 n. 20, 72 L.Ed.2d 606 (1982) ("By establishing ... that uniform capsule colors served a functional purpose, the petitioners offered a legitimate reason for producing an imitative product"); *Devan Designs*, 25 U.S.P.Q.2d at 1400, 1992 WL

---

**15.** The opinions in *Polo Fashions* and *Osem Food* also could be reasonably read to require intent (*i.e.*, motive) by the defendant to capitalize on the plaintiff's trademark or to deceive customers before a presumption of likelihood of confusion arises. The Court notes that this is the reading that district courts in this Circuit appear to be giving to *Osem Food*. *See, e.g., Devan Designs, Inc. v. Palliser Furniture Corp.*, 25 U.S.P.Q.2d 1991, 2001, 1992 WL 511694 (M.D.N.C.1992), *aff'd* 27 U.S.P.Q.2d 1399, 998 F.2d 1008 (4th Cir.1993) ("this court believes that the Fourth Circuit would require an intent to confuse" in order to give rise to the presumption); *cf. Johnson v. Automotive Ventures, Inc.*, 890 F.Supp. 507, 516 n. 14 (W.D.Va.1995) ("the rule [that a

presumption of secondary meaning arises from intentional copying] must presuppose that a defendant's motivation for the intentional copying is to gain an unfair competitive advantage by appropriating the good will associated with the mark").

**16.** In its two most recent trademark/unfair competition cases, the Supreme Court has cited favorably to the *Restatement*. *See Qualitex Co. v. Jacobson Prods. Co.*, — U.S. —, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

511694 ("Competition on functional ... features is encouraged"). Accordingly, the Court will not apply the presumption. *See Restatement,* § 22 comment c ("if the actor reasonably believes that the other's designation is functional ..., proof that the actor intentionally copied the other's designation does not justify an inference of confusion").[17]

### 3. Shakespeare Has Not Established Likelihood Of Confusion

■ Turning now to the question of whether Shakespeare has proven by the evidence presented at trial that Silstar's use of the clear tip on the Power Tip Crystal rod creates a likelihood of confusion, the Court concludes that the most persuasive factors, under the circumstances present here, strongly weigh in favor of Silstar. For this reason, the Court finds that Shakespeare has failed to establish a likelihood of confusion.

As the Court has previously found, although there is a similarity between Shakespeare's trademark and the clear tip on Silstar's Power Tip Crystal rod, *see Shakespeare I,* 802 F.Supp. at 1392; a factor which at least superficially favors Shakespeare, there is a significant difference in appearance between the Ugly Stik and the Power Tip Crystal rods:

> Other than the similarity between the color configurations of the rod base and tip, the Power Tip Crystal and Ugly Stik rods differ significantly in appearance. For example, Shakespeare uses silver colored line guides, a silver colored extreme tip portion, and red and yellow diamond wrap at

the base of the rod above the handle. In contrast, Silstar uses gold colored line guides, a gold colored extreme tip portion, and no wrap at the base of the rod. Moreover, the handles differ significantly in shape (cylindrical v. tapered) and the reel sets differ in color (black vs. gold). Finally, Shakespeare places its Ugly Stik logo in prominent white letters on its rods, while Silstar's lower tip Crystal logo appears in gold letters with a red background.

*Id.* at 1392–93. Apart from the functional attributes which all fishing rods obviously share, Silstar has taken all reasonable measures to distinguish the Power Tip Crystal rod from the Ugly Stik rod.[18]

■ This is especially significant here because of the manner in which the parties' rods are sold to consumers. While the parties use similar facilities to market their rods (notably retail outlets), another factor which favors Shakespeare, the rods are normally displayed in eye-level racks which readily allow the potential purchaser to see and appreciate the features of the rods, including the prominently displayed manufacturers' names. Moreover, the evidence presented at trial, primarily through cross-examination of Shakespeare's own witnesses (Tim Fraylick and Wayne Asbill), establishes that the ordinary fishing rod purchaser, indeed almost all fishing rod purchasers, removes the fishing rods from the racks and thoroughly inspects them prior to making a purchase.[19] Under these circumstances, there is very little probability that an appreciable number of consumers, exercising due care, would be confused by Silstar's use of the clear tip on the Power Tip Crystal rod. *See Perini Corp.,*

**17.** "It is axiomatic that a presumption is not evidence and disappears in the face of evidence sufficient to rebut it." *Tenneco Chems., Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 663 (4th Cir.1982). Normally, when the evidence presented by the plaintiff creates a presumption in its favor, it has both satisfied its burden of going forward and also shifted that burden to the defendant, who must then rebut the presumption to satisfy its burden. *Keeler Brass Co. v. Continental Brass Co.,* 862 F.2d 1063, 1066 (4th Cir. 1988). If the defendant fails to meet its burden, the plaintiff may be able to prevail on the strength of the presumption. *Id.* If the defendant meets its burden of rebuttal, the factfinder then must consider all of the evidence on the issue, keeping in mind that the plaintiff has the ultimate burden of persuasion. *Id.* The Court

finds that even if Shakespeare is entitled to this presumption, the presumption would be rebutted by the evidence discussed below.

**18.** As the Court has previously recognized, *see Shakespeare I,* 802 F.Supp. at 1398, it would be unreasonable to require Silstar not to use the clear tip under the circumstances presented.

**19.** Tim Fraylick is a former Shakespeare employee who testified that all fishing rod purchasers remove and inspect fishing rods during the purchasing decision, and that they all inspect what is written on the rods. Wayne Asbill, a K–Mart Division manager who has worked in K–Mart's sporting goods area for many years, testified similarly.

915 F.2d at 127 ("the sophistication and expertise of the usual purchasers can preclude any likelihood of confusion"); *Restatement,* § 21 comment h ("If the goods or services are normally purchased only after considerable attention and inspection, greater similarity between the designations may be permitted than when the goods or services are purchased casually or impulsively"); *see, e.g., L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1134 (Fed.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993) ("We conclude that the conspicuous and permanent placement of the trademarks of L.A. Gear as well as the copyist, and the sophistication of purchasers of fashion athletic shoes, clearly outweigh the similarities in the shoe design, insofar as consumer confusion as to source is avoided").[20]

In considering the other pertinent factors, there are, as the Court has already noted, several which favor Shakespeare.[21] For example, in addition to the above-noted similarity between the parties' marks and the fact that the rods are sold in close proximity in the market, both of which are effectively negated here by the overall appearance of the rods and the manner in which they are purchased, the method in which the parties advertise their respective fishing rods also favors Shakespeare. Both parties conduct trade advertising and consumer advertising by using catalogues, trade journals, news releases, and trade shows, and both parties' advertising efforts are aimed at the same "middle of the road" level of the fishing market. However, the Court finds this factor to be relatively insignificant in the context of this case because Shakespeare does not appear to have placed a significant emphasis on advertising the clear tip portion of its rods as an element to be identified with Shakespeare *per se.*[22] In fact, the clear tip is not even depicted in many of Shakespeare's advertisements. Moreover, as set forth above, the ordinary consumer, in making a fishing rod purchase, can very clearly see and appreciate that the Ugly Stik and the Power Tip Crystal rods are manufactured by different entities.

 The relative strength of Shakespeare's trademark is also a factor that

---

**20.** The Court "is free to draw upon [its] own experience and observation to make an informed judgment as to the likelihood of confusion apt to be spawned by strongly analogous symbols." *Volkswagenwerk AG v. Hoffman,* 489 F.Supp. 678, 682 (D.S.C.1980); *see also Selchow & Righter Co. v. Decipher, Inc.,* 598 F.Supp. 1489, 1497 (E.D.Va.1984) ("[t]he Court may rely upon its own inspection of the products in determining whether there exists a likelihood of confusion"). The Court's inspection of the various rods presented at trial also leads to the finding that no likelihood of confusion will result from Silstar's use of the clear tip on its fishing rods.

**21.** Several factors are not relevant. For example, the "bridging the gap" factor, which "examines whether the prior user may wish to enter the defendant's market in the future," *Paddington Corp. v. Attiki Imports. & Distribs., Inc.,* 996 F.2d 577, 586 (2d Cir.1993); is irrelevant because Shakespeare and Silstar compete in the same market with respect to the clear-tipped rods. *Id.; see also Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1044 (2d Cir.1992) ("In the case of competing products, ... the likelihood of bridging the gap ... is not a relevant inquiry"). Moreover, because the Ugly Stik and Power Tip Crystal rods are of nearly identical quality, "a comparison of the quality of the products is not particularly helpful in determining the likelihood of confusion." *Id.* Finally, while the fact that Silstar has acted in good faith in its use of the clear tip avoids a presumption of likelihood of confusion, *see supra* Part II–A–1; it does not otherwise tend to prove or disprove likelihood of confusion.

While there is no evidence of any instances in which consumers have been actually confused between the fishing rods at issue, this is primarily due to the fact that there were only limited sales of the Silstar Power Tip Crystal Rod before Judge Hamilton, the judge originally assigned to this case, preliminarily enjoined Silstar from selling the rod. *See Comcet, Inc.,* 429 F.2d at 1251 ("quite naturally, proof of actual confusion is slight because the suit was instituted when Comcet was in its infancy"); *Quality Inns Int'l,* 695 F.Supp. at 216 ("When the junior mark has not been presented to the consuming public, ... there is less opportunity to determine whether actual confusion exists"). It is of some significance, however, that when another rod manufacturer, Zebco, Inc., sold approximately 5,000 clear-tipped rods, there were, according to the testimony, apparently no reported instances of consumer confusion.

**22.** As the Court has previously found: "Shakespeare has repeatedly advertised and promoted the fact that the clear fiberglass tip is unique, is the result of an exclusive patented process, and imparts strength, flexibility, and sensitivity to the rod which cannot be achieved through any other process." *Shakespeare I,* 802 F.Supp. at 1393.

somewhat favors Shakespeare. In considering this factor, the Court recognizes that marks are categorized into four classes in increasing order of strength or distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary, *Lone Star Steakhouse,* 43 F.3d at 933; and generally the stronger the mark, the greater amount of protection is afforded. *Qualitex Co.,* —— U.S. at ——, 115 S.Ct. at 1305.[23] The Court has previously concluded that although Shakespeare's trademark is descriptive—*i.e.,* "the clear tip, in combination with the opaque rod base, signifies to consumers that the rod is composed of a graphite base with a solid fiberglass tip, both of which are features that are positive characteristics of fishing rods"—it has presumptively acquired secondary meaning because the PTO registered it pursuant to 15 U.S.C. § 1052(f). *See Shakespeare I,* 802 F.Supp. at 1396 & n. 5.[24] While this presumption of secondary meaning does not necessarily mean that Shakespeare's trademark has the strength of a suggestive mark, *Arrow Fastener Co.,* 59 F.3d at 393 n. 6; it does, if unrebutted, render the mark stronger and more worthy of protection than a merely descriptive mark, *Americana Trading, Inc. v. Russ Berrie & Co.,* 966 F.2d 1284, 1287 (9th Cir.1992); which is a weak mark that is not accorded trademark protection. *Pizzeria Uno,* 747 F.2d at 1527.

Based on the evidence presented at trial, the Court finds that Silstar has failed to rebut the presumption that Shakespeare's trademark, which is clearly descriptive, has acquired some secondary meaning.[25] This does not mean, however, that the Court finds that Shakespeare's trademark is either suggestive or otherwise particularly strong. Indeed, Shakespeare's attempt to prove the strength of its mark, when compared to the contrary evidence, is not persuasive. For example, although Shakespeare has devoted considerable resources and effort into advertising rods which bear its trademark, *see Shakespeare I,* 802 F.Supp. at 1393; as noted above, not all of the advertisements depict the trademark, and much of this advertisement has served to emphasize the positive (and functional) attributes of the clear tip rather than the fact that the clear tip indicates that the rods are manufactured by Shakespeare. Moreover, the testimony of the witnesses upon whom Shakespeare primarily relies to establish the strength of its trademark is very general on this point, particularly in light of the survey evidence presented by Silstar, which indicates that the clear tip does not have much source-identifying power among active fishermen.[26]

**23.** The "strength" of a mark "refers to a mark's 'tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 391 (2d Cir. 1995) (citation omitted). The Court is not precluded from examining the strength of Shakespeare's trademark by virtue of the fact that it is incontestable. *Lone Star Steakhouse,* 43 F.3d at 934–35.

**24.** When, as here, the PTO requires a party to register its mark under § 1052(f), it "necessarily decides" whether the mark is descriptive rather than suggestive. *Lone Star Steakhouse,* 43 F.3d at 934. If a party is required to proceed under § 1052(f), it must provide evidence of the mark's distinctiveness prior to registration. *Lone Star Steakhouse,* 43 F.3d at 936 n. 15. The Fourth Circuit holds that the decision of the PTO in this regard is *prima facie* evidence of whether the mark is descriptive or suggestive. *Id.* at 934.

The Fourth Circuit also holds that intentional copying of a mark gives rise to a presumption of secondary meaning. *Osem Food,* 917 F.2d at 163. However, for the reasons discussed in Part II–A–1, the Court finds that Shakespeare is not entitled to the presumption on this basis. *See Johnson,* 890 F.Supp. at 516 n. 14.

**25.** In light of this finding, the Court concludes that there is no merit to Silstar's counterclaims seeking cancellation based on grounds of genericness and loss of secondary meaning.

**26.** "It is undisputed that appropriate survey evidence is meaningful to establish the likelihood [vel non] of confusion...." *Quality Inns, Int'l,* 695 F.Supp. at 207. Out of a random nationwide sample of active fishermen, less than 3% associated, without prompting, the clear tip on a fishing rod with Shakespeare or the Ugly Stik. When the fishermen were prompted that the clear tip may have source-identifying significance, the total who associated the clear tip with either Shakespeare or the Ugly Stik rose only to approximately 8%. Of those fishermen who said that the clear tip has some source-identifying significance, only four respondents (1% of the sample) said that there would be any confusion if someone else made a clear-tipped rod. Although Shakespeare disputed the validity of this survey, perfection is not the standard, *see Quality Inns, Int'l,* 695 F.Supp. at 218; and with respect to any alleged flaws which may be associated with

It could perhaps be argued that because slightly more of the above-noted factors favor Shakespeare, that fact alone establishes likelihood of confusion. However, the Fourth Circuit has recognized and held that all products have a separate threshold for confusion of origin, *Perini Corp.*, 915 F.2d at 127; and that the likelihood of confusion determination is an inherently factual inquiry that depends on the facts and circumstances of each case. *Lone Star Steakhouse*, 43 F.3d at 933. As a consequence, the relevant factors are not to be applied according to a rigid formula and they may not have equal importance in a given case. *Anheuser–Busch*, 962 F.2d at 320. Thus, in making the likelihood of confusion determination in this case, the Court "must examine [Silstar's use of the clear tip] in the context in which it is seen by the ordinary consumer, ... look[ing] not only at the [clear tip], but at the [fishing rods] as a whole as sold in the marketplace," *Id.* at 319; and, after doing so, must determine whether the relevant factors compel a finding of likelihood of confusion among an appreciable number of consumers, *Quality Inns, Int'l*, 695 F.Supp. at 209; who exercise care in the marketplace. *Dwight S. Williams Co.*, 233 F.2d at 402. Having reviewed the evidence in this light, the Court finds and concludes that Shakespeare has failed to establish a likelihood of confusion.[27] Because likelihood of confusion is a necessary element of all of Shakespeare's claims, they fail as a matter of law.

## B. The Fair–Use Defense

### 1. The Applicable Law

■ Even assuming *arguendo* that Shakespeare has established a likelihood of confusion, whether by use of the presumption or by the evidence presented, the Court nevertheless concludes that Silstar must prevail in this case because of its fair-use defense.[28] Extrapolating from the Fourth Circuit's statement in *Dayton Progress Corp.*, 917 F.2d at 840; that "[t]o establish a fair use defense ..., Lane must prove that the designators are used 'fairly and in good faith' only to describe the punches and that the infringing mark is not used as a trademark," the Court concluded in *Shakespeare I* that Silstar established the elements of a fair-use defense because (1) the clear tip is a descriptive device; (2) Silstar's use of the clear tip is not as a trademark but is merely descriptive; and (3) Silstar is using the clear tip fairly and in good faith. 802 F.Supp. at 1395–96.[29] While the *Shakespeare II* panel majority did not reject either the underlying findings of fact or conclusions of law on this issue,[30] it

this survey, upon which there was a conflict among the parties' expert witnesses, the Court has considered the alleged flaws in assessing the weight to be given to the survey. *See AHP Subsid. Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir.1993) ("We believe that any shortcomings in the survey results go to the proper weight of the survey and should be evaluated by the trier of fact").

27. Even if the Court has erred in its assessment of the strength of Shakespeare's trademark, the Court would still adhere to this conclusion based on the evidence presented in this case. *See Anheuser–Busch*, 962 F.2d at 320 (despite the fact that the plaintiff's trademarks were "unquestionably strong" and that most of the pertinent factors also favored the plaintiff, court of appeals accepted jury [*i.e.*, factfinder] determination that no likelihood of confusion had been established); *cf. Lone Star Steakhouse*, 43 F.3d at 936 (indicating that regardless of the strength of the plaintiff's trademark, other factors may be determinative).

28. The Court stated in *Shakespeare I* that establishment of the fair-use defense not only gives a defendant the right to use a mark, but it also

reduces the evidentiary status of the registration of an incontestable trademark to that of a mark which is not incontestable. 802 F.Supp. at 1397; *see also Park 'N Fly, Inc.*, 469 U.S. at 199 n. 6, 105 S.Ct. at 664 n. 6; *Restatement*, at § 28 Reporters' Note comment a. In rejecting the cancellation of Shakespeare's trademark on grounds of functionality, the panel majority apparently also rejected this interpretation of the fair-use defense.

29. While, as noted, the Court stated in *Shakespeare I* that "there is *no indication* that Silstar's attempt to utilize the clear tip is unfair or in bad faith," 802 F.Supp. at 1396 (emphasis added); this statement should be clarified. Despite the inference of bad faith that Shakespeare urges the Court to draw from the evidence, the Court finds, based on the evidence presented, including the Court's credibility assessments, that Silstar is not attempting to use the clear tip in an unfair manner or otherwise acting in bad faith.

30. Although the Court is not privy to the matters addressed at oral argument before the Fourth Circuit, the Court notes that Shakespeare addressed the Court's fair-use analysis and determination at length in its appellate briefs.

did, as noted, instruct this Court that "any inquiry into an alleged 'fair use' of the clear tip must be accompanied by an analysis of the likelihood of confusion among consumers that may be created by Silstar's use of the clear tip." *Shakespeare II*, 9 F.3d at 1099.

In rejecting this Court's prior conclusion that likelihood of confusion is irrelevant where the fair-use defense has been established, the panel majority did not indicate to what extent, if any, the fair-use defense is applicable when likelihood of confusion has been established, and this appears to be a novel question in this Circuit.[31] While there is some authority which holds that there can be no fair use when any likelihood of confusion has been shown, *see, e.g., Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 134 (S.D.N.Y.1989); the Court concludes that the better view, as expressed in the *Restatement*, is to the contrary:

> The fair use defense recognized in this Section can be applicable even if the trademark owner presents evidence sufficient to prove a likelihood of confusion. If the manner of use by the defendant is reasonable in light of the commercial justification for the use, the possibility or even certainty that some prospective purchasers will perceive the term as an indication of source despite the reasonableness of the defendant's use is not sufficient to deprive the defendant of the right to employ the term in its descriptive sense. Thus, a defendant who uses a descriptive term fairly and in good faith to describe its goods or services is not liable for infringement even if some residual confusion is likely.

*Id.* at § 28 comment b. *See William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S.

526, 529, 44 S.Ct. 615, 616, 68 L.Ed. 1161 (1924) ("the use of a similar [mark] by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product"). This view is not inconsistent with the panel majority's instruction because it does not, as this Court had previously concluded, render likelihood of confusion irrelevant upon a showing of fair use. Instead, under this view "the strength of the plaintiff's mark and the extent of likely or actual confusion are important factors in determining whether a use is fair." *Restatement*, at § 28 comment b.[32]

**2. Assuming That Shakespeare Has Established Likelihood Of Confusion, Silstar Has Established The Fair–Use Defense**

█ As noted, the Court has concluded that Shakespeare's trademark is not particularly strong and that Shakespeare has failed to establish a likelihood of confusion. However, even to the extent that the Court's conclusions in this regard could be deemed erroneous, the Court finds that whatever strength Shakespeare's trademark may have or any confusion which may arise from Silstar's use of the clear tip does not, under the evidence of this case, outweigh Silstar's right to use the clear tip, which is a functional attribute of these type of fishing rods, fairly and in good faith as a descriptive device. As the Court found in *Shakespeare I* and has reemphasized throughout this Order, Shakespeare's trademark represents a functional feature of graphite fishing rods which have a solid fiberglass tip, and Silstar merely seeks,

**31.** In *Schafer Co. v. Innco Mgt. Corp.*, 797 F.Supp. 477 (E.D.N.C.1992), *aff'd*, 27 U.S.P.Q.2d 1239, 995 F.2d 1064 (4th Cir.1993); the Fourth Circuit affirmed a district court's entry of summary judgment in favor of the defendant on the plaintiff's trademark claim based on the defendant's proof of the fair-use defense. Notably, there is nothing in either the district court order or the appellate opinion which addresses whether the plaintiff had established a likelihood of confusion. Moreover, in the only other Fourth Circuit decision in which the fair-use defense is specifically discussed, *Dayton Progress Corp.*, the Fourth Circuit examined both issues, but did

not discuss the relationship between them. *See* 917 F.2d at 839–40. Finally, in *Durox Co.* the Fourth Circuit recognized that "[t]here is authority that there may not be infringement even where likelihood of confusion is found," but the court did not decide the issue. *See* 320 F.2d at 885 n. 4.

**32.** Although the Court indicated in its post-remand Order that a showing of likelihood of confusion would render the fair-use defense inapplicable, the Court has now reconsidered that statement and hereby rejects it.

in good faith, to use the clear tip on its rods only in a descriptive sense and not as a means of source-identification.

In his thorough *Shakespeare II* dissent, Judge Niemeyer addressed the important role that the doctrine of functionality plays in trademark law, *see Shakespeare II,* 9 F.3d at 1099–1106; and although the panel majority did not accept his ultimate conclusion that functionality rendered Shakespeare's trademark unenforceable, it did not reject his underlying analysis. *Cf. Venta, Inc. v. Frontier Oil & Refin. Co.,* 827 F.Supp. 1526, 1531 n. 7 (D.Colo.1993) ("A majority opinion cannot be assumed to affirmatively hold the opposite of every argument or conclusion advanced by the dissent"). While there has not yet been appellate approval (or disapproval) of the Court's determination that Shakespeare's trademark represents a functional attribute, *but see Shakespeare II,* 9 F.3d at 1105 (Niemeyer, J. dissenting) ("It is uncontrovertible that the [clear tip] is nothing more than a manifestation of the product's design, as found by the district court"); the Court is convinced that the evidence establishes the conclusion. This is significant because normally

> The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the provence of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, . . . after which competitors are free to use the innovation. If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

*Qualitex,* —— U.S. at ——, 115 S.Ct. at 1304; *see also Two Pesos,* 505 U.S. at 769, 112 S.Ct. at 2758 ("It is also clear that eligibility for protection under § 43(a) depends on nonfunctionality").

The panel majority's determination in *Shakespeare II* that Shakespeare's trademark may not be cancelled on the ground of functionality entitles the mark to remain on the Federal Register and, due to its incontestability, to be entitled to certain evidentiary benefits. This determination, which the Court fully respects, makes this case somewhat unique, since it removes Shakespeare's trademark from within the normal scope of the functionality rule. However, as addressed above, functionality is still a relevant factor and where, as here, a party (Silstar) seeks, in good faith and not as a means of source-identification, to use a functional feature of a product which another party (Shakespeare) has registered as a trademark, it is not unreasonable or unfair to allow even some residual confusion to occur. Under these circumstances, there could likely be no fairer use of a registered trademark. *See again Bonito Boats,* 489 U.S. at 164, 109 S.Ct. at 984 (" '[r]eproduction of a functional attribute is legitimate competitive activity' "); *Inwood Labs.,* 456 U.S. at 857 n. 20, 102 S.Ct. at 2190 n. 20 ("By establishing . . . that uniform capsule colors served a functional purpose, the petitioners offered a legitimate reason for producing an imitative product"); *Devan Designs,* 25 U.S.P.Q.2d at 1400, 1992 WL 511694 ("Competition on functional . . . features is encouraged"). For these reasons, the Court concludes that Silstar must prevail on its fair-use defense.

### III. CONCLUSION

■ Based on the foregoing, the Court hereby **ORDERS** on this the 17th day of November, 1995, at Columbia, South Carolina, that judgment be **ENTERED** in favor of Silstar on Shakespeare's claims due to (1) Shakespeare's failure to prove likelihood of confusion and (2) Silstar's establishment of its fair-use defense.[33]

---

**33.** The Court has addressed and rejected *supra* Silstar's counterclaims seeking cancellation

based on grounds that the trademark has become generic and the trademark has lost its secondary meaning. The Court now concludes that Silstar's attempt to cancel Shakespeare's trademark merely because it consists of two contrasting colors appears, based on this record, to be foreclosed by the Opinion in *Qualitex Co.*, in which the Supreme Court held that a color alone may, in appropriate cases, serve as a valid trademark. —— U.S. at ——, 115 S.Ct. at 1302; *see also Shakespeare I*, 802 F.Supp. at 1395 ("Although 'color' is not included in the definition of 'trademark,' it is clear that a color configuration, such as Shakespeare's mark, can serve as a valid trademark"). The Court further concludes that Silstar has failed to establish its defense of unclean hands or its counterclaim for cancellation based on source misrepresentation. While the Court is cognizant of the admonition against alternative rulings, the Court has made these findings and conclusions so that a potential second remand may be avoided.