**DAYTON PROGRESS CORPORATION, Plaintiff–Appellee,**

v.

**LANE PUNCH CORPORATION, Defendant–Appellant,**

and

**Jerry W. Campbell; James William Porter, Defendants.**

No. 89–2740.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1990.

Decided Oct. 31, 1990.

---

Floyd A. Gibson, argued (Paul F. Pedigo, on the brief), Bell, Seltzer, Part & Gibson, Charlotte, N.C., for defendant-appellant.

Kip Allen Frey, argued (I. Faison, Hicks, David L. Lange, on the brief), Parker, Poe, Thompson, Bernstein, Gage & Preston, N.C., for plaintiff-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and HOFFMAN, Senior District Judge for the Eastern District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Dayton Progress Corporation (Dayton) sued Lane Punch Corporation (Lane) alleging that Lane had committed unfair competition, false advertising, misappropriation, common law trademark infringement, and violations of N.C.Gen.Stat. § 75–1.1. The district court decided in favor of Dayton and permanently enjoined Lane from using thirty-nine of Dayton's product designators.[1] Lane appeals arguing that the district court erred in ruling that the Dayton designators were descriptive marks; that the district court erred in finding that the

---

1. The district court enjoined Lane from using the following product designators:

| VJB | VPR | VYX | VBO | VEO | VJR | VVX | VAO | VFO | VGO |
| VPB | VJO | VUX | VBR | VER | VPX | VXX | VAR | VFR | VGR |
| VJX | VWX | VAX | VFX | VGX | VPO | VCX | VBX | VEX | VQX |
|  |  |  |  |  | MHX | MFX | MEX | LJX | LPB |
|  |  |  |  |  | LJB | HJX | HJO | HJR |  |

designators had acquired secondary meaning; that the district court erred in finding a likelihood of confusion; that the district court erred in finding that Lane's use of the designators was not a fair use; and that the district court improperly granted Dayton a monopoly over the commonly understood die component language. After a trial to the court, the district court filed its thorough and accurate opinion. We affirm.

Dayton and Lane are competitors in the tool and die manufacturing industry. In the early 1960's, Dayton developed an organized set of product designators to identify its precision punches. It created three-letter combinations to identify each particular punch. These designators, which were unique in the industry, were to be used in conjunction with a series of size codes to determine a particular punch's dimensions. In Dayton's system, the first letter in the three letter combination stands for the grade or class of the punch.[2] The second letter stands for the specific type or function of the punch. The third letter stands for the shape of the hole produced by the punch. In 1971, Dayton developed a similar designation system for its ball-lock family of die components.

Dayton has continuously used its product designators in its advertising and promotion since their creation.[3] It developed and uses a training program to educate distributors on the designation system. Since their creation, Dayton has had substantially[4] exclusive use of the designators. With the exception of Lane, every other manufacturer in the industry sells its products through its own catalog designation system which differs from Dayton's.

Some of the competitors use two, four, or five letter designators, some use combinations of letters and numbers, and some use three letter designators but with the positions different than those in Dayton's system.

Richard Alldred acted as Dayton's national sales manager from 1975 to 1984. During his term with Dayton, Alldred became familiar with Dayton's designators and their marketing value. Lane hired Alldred in January of 1985. Shortly after Alldred started with Lane, Lane adopted thirty-three[5] of the designators now in question. On April 2, 1987, Dayton filed the present suit against Lane.

The district court decided that Dayton's designators are descriptive marks, capable of trademark protection upon proof of secondary meaning. The district court further held that Dayton had proven both secondary meaning in the designators and a likelihood of confusion with Lane's products. The district court rejected Lane's defense of fair use. Finally the district court concluded that Lane's action constituted a violation of both the Lanham Act and was a deceptive trade practice under Section 75–1.1 of the North Carolina General Statutes. It permanently enjoined Lane from using the thirty-nine designators in question. Lane appeals.

Lane first argues that the district court erred in ruling that the designators in question are descriptive marks. It argues that the designators are really generic marks. Courts classify marks into four groups "in an ascending order of strength or distinctiveness: 1. generic; 2. descrip-

**2.** For example, all of Dayton's punches beginning with the letter "V" such as the "VJB" are "versatile", which is the Dayton name of the "variable" or "precision" line of punches.

**3.** Dayton has advertised the "V" and "M" series of designators for some 27 years and its "H" and "L" series for some 18 years.

**4.** There have been isolated instances of use by competitors of the designators in question. In almost every one of the instances of use by a competitor, Dayton took or threatened legal action which led to the competitor stopping such use. The exception is that a competitor, Dayton

Multi–Punch, used the designators MEX and MPX for two of its precision punches. Dayton Progress, however, uses MEX and MPX for micro-precision punch products. The district court found that the products were so dissimilar that there would not be customer confusion even if they shared the same designators.

**5.** Lane had previously, in 1983, adopted the other six designators in question when it published its international ball lock catalog for that year. Faced with conflicting testimony as to when Dayton first learned of Lane's 1983 use of the six designators, the district court found that it did not learn of it until October of 1986.

tive; 3. suggestive; and 4. arbitrary." *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). Unfortunately, the "categories, like colors in a spectrum, tend to blur at the edges and merge together, making it difficult to apply the appropriate label." *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1325 (8th Cir.1984). A district court's finding as to the category in which a mark belongs is reviewed under the clearly erroneous standard. *Pizzeria,* 747 F.2d at 1526. A mark is generic if it "denominate[s] a type, kind, genus or subcategory of goods." *G. Heileman Brewing Co. v. Anheuser Busch, Inc.,* 873 F.2d 985, 997 (7th Cir.1989). A mark is descriptive if it " 'identifies a characteristic or quality of an article or service.' " *Pizzeria,* 747 F.2d at 1528, quoting *Soweco Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). The distinction between a generic mark and a descriptive mark is a matter of degree. As one commentator has noted:

> [a] generic term categorizes; it conveys information with respect to the nature or class of an article. A descriptive term categorizes; it identifies the characteristics and qualities of the article, such as its color, odor, functions, dimensions or ingredients. A generic term identifies the general nature of an article, whereas a descriptive term indicates its special characteristics.

3 L. Altman, *Callman Unfair Competition, Trademarks, and Monopolies,* § 18.03, ch. 18, at 11 (4th ed. 1983). Each designator in question in this case stands for three specific characteristics of the product: the grade or class of the punch, the specific function of the punch, and the shape of the tip of the punch. We are of opinion that the district court's holding that the designators were descriptive marks was not clearly erroneous.

Next Lane argues that the district court erred in finding that the designators had acquired secondary meaning. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982). As one commentator has stated, "[t]he prime element of secondary meaning is a *mental association* in buyers' minds between the alleged mark and a single source of the product." 1 J. McCarthy, *Trademarks and Unfair Competition,* § 15.2 at 659. The district court found that Dayton had proved that the designators had acquired secondary meaning.[6] Such a finding is reviewed under the clearly erroneous standard. *K–S–H Plastics, Inc. v. Carolite, Inc.,* 408 F.2d 54, 58 (9th Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 69, 24 L.Ed.2d 76 (1969). The district court had before it ample evidence in the testimony of numerous witnesses to support its finding that the designators had acquired secondary meaning. Its ruling therefore is not clearly erroneous.

Lane next argues that the district court erred in finding that a likelihood of confusion exists. First, it is said that there can be no likelihood of confusion because the designators have not acquired a secondary meaning in the minds of consumers. We have decided that the district court's holding that the designators have acquired a secondary meaning is not clearly erroneous, so that argument is without merit. Lane's final argument, with respect to the likelihood of confusion issue, is its assertion that purchasers of punches are sophisticated buyers. The district court expressly found that "the actual purchasing function of any end-user establishment is often

---

**6.** We especially note that the district court found that Lane had intentionally copied Dayton's designators. In cases where the second comer intentionally copies the mark of a senior user, there is a presumption of secondary meaning. *M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 449–50 (4th Cir.1986). The presumption effectively shifts the burden of proof to the second comer to show a lack of secondary meaning. In this case, the district court decided that not only had Lane failed to prove a lack of secondary meaning but that Dayton had affirmatively proven the existence of secondary meaning.

performed by purchasing department employees, who are removed from, and unfamiliar with, tool and die components, and who are relatively unsophisticated with respect to tool and die components." This factual finding by the district court, also, is not clearly erroneous.

 The next argument we mention is Lane's claim that the district court erred in finding that Lane's use of the designators was not a fair use. Lane argues that since the designators are generic marks that any use of them would be a fair use. However, as we mentioned above, the district court's finding that the designators are descriptive marks is not clearly erroneous. Lane further argues that since it includes its corporate logo on its products, its use of the designators is fair use.[7] However the mere inclusion of its logo on the product is not sufficient to establish the defense of fair use. To establish a fair use defense for these designators, Lane must prove that the designators are used "fairly and in good faith" only to describe the punches and that the infringing mark is not used as a trademark. 15 U.S.C. § 1115(b)(4). Here, the district court found that Lane's adoption and use of the designators was not in good faith. While faced with conflicting evidence, the district court heard the witnesses and determined credibility and the weight of the evidence. Its holding Lane's adoption and use of the designators was not in good faith is also not clearly erroneous.

 Lane's final argument is that the district court improperly granted Dayton a monopoly over the commonly understood die component language. Lane argues that since consumers are so familiar with Dayton's designators, that it will be nearly impossible for it to sell punches which are equivalent to Dayton punches without calling them by Dayton's designators.[8] That argument fails, however, because, except for Lane, every other producer of punches which competes with Dayton's products has its own designation system which is different from Dayton's. If Lane's argument were correct, Dayton would either have no competitors or all of its competitors would use Dayton's designators. Lane's argument also fails because the district court found[9] that no manufacturer's designation system had become an industry standard. Although apparently successful, Dayton's designators are not, as Lane asserts, the die component industry's standard language.

The district court filed a thorough and excellent opinion in this case in connection with its decision, which we affirm without reservation. We have not mentioned in detail each of the numerous aspects of the claims of error asserted by Lane, and our opinion enunciates only those aspects of the appeal we think are the principal contentions. We have, of course, considered all of Lane's assignments of error and are of opinion that none of them are meritorious.

The judgment of the district court is accordingly

AFFIRMED.

---

7. We note that the district court found that a name etched on punches "can be, and often is, obliterated or rendered largely illegible by wear, lubricants, or dirt." The district court further found that even if Lane's logo was visible that it may lead consumers to "believe that Lane is a licensor of Dayton or an affiliated company."

8. We also reject Lane's argument that it can no longer use the English language to describe its products because the district court enjoined them from using Dayton's designators and the designators contain every letter except the letter

"I". We do not read the district court's injunction so broadly. The district court merely enjoined Lane from using thirty-nine of Dayton's product designators. While Lane is free to use its own designation system for its products, it is not free to use the thirty-nine Dayton product designators which were litigated in this case. We express *no opinion* on any designation Lane may use except to say it may not use the thirty-nine in issue here.

9. Lane has failed to demonstrate that this finding by the district court was clearly erroneous.