**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHAKESPEARE COMPANY,
Plaintiff-Appellant,

v.

No. 95-3208

SILSTAR CORPORATION OF AMERICA,
INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-90-1695-3-19)

Argued: December 6, 1996

Decided: April 3, 1997

Before WIDENER, MURNAGHAN, and NIEMEYER,
Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Murnaghan joined. Judge Widener wrote a dissenting
opinion.

_____

**COUNSEL**

**ARGUED:** Sylvia Ann Petrosky, RENNER, KENNER, GREIVE,
BOBAK, TAYLOR & WEBER, Akron, Ohio, for Appellant. Francis
Morris Pinckney, SHEFTE, PINCKNEY & SAWYER, Charlotte,
North Carolina, for Appellee. **ON BRIEF:** Jack L. Renner, Ray L.

Weber, RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER, Akron, Ohio; James M. Brailsford, III, Frank R. Ellerbe, III, ROBINSON, MCFADDEN & MOORE, Columbia, South Carolina, for Appellant. William C. Cleveland, Thomas S. White, HAYNSWORTH, MARION, MCKAY & GUERARD, Charleston, South Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Shakespeare Company, the owner of a registered trademark for fishing rods that have a "whitish translucent" tip and a contrasting opaque shaft, brought this trademark infringement action against Silstar Corporation of America, Inc. which also manufactures a clear-tipped fishing rod. Because of the functional or descriptive aspects of Shakespeare's mark, the district court initially ordered the Commissioner of the Patent and Trademark Office to cancel its registration. See Shakespeare Co. v. Silstar Corp. of America, Inc. (Shakespeare I), 802 F. Supp. 1386 (D.S.C. 1992). On appeal, however, we held that because Shakespeare's trademark had become incontestable under 15 U.S.C. § 1065, it could not be canceled. We remanded the case for resolution of the remaining infringement issues. See Shakespeare Co. v. Silstar Corp. of America, Inc. (Shakespeare II), 9 F.3d 1091 (4th Cir. 1993). On remand, the district court found, among other things, that "Silstar's use of the clear tip on its fishing rods will [not] create a likelihood of confusion" and that, in any event, Silstar had "established its fair-use defense." Shakespeare Co. v. Silstar Corp. of America, Inc. (Shakespeare III ), 906 F. Supp. 997, 1001 (D.S.C. 1995). We now affirm.

I

In the 1940s, fishing rods were manufactured from either hollow or solid fiberglass. Hollow fiberglass rods were lighter and less expensive than solid ones, but they were also more inclined to break, particularly at the tip. While solid rods were stronger, they were also heavier and more expensive than the hollow ones.

2

Shakespeare, which has been one of the leading manufacturers of fishing rods, developed a process that combined the benefits of each type of rod by joining a hollow fiberglass base to a solid fiberglass tip. With developments in graphite in the mid 1970s, Shakespeare added a graphite core to the base of the rod, making it even stronger. The tip remained solid fiberglass, which is both strong and flexible. Shakespeare patented its invention and for years was the only manufacturer of fishing rods with a hollow graphite base and a solid fiberglass tip.

Because graphite is naturally charcoal gray and fiberglass is naturally clear or "whitish translucent," Shakespeare's rods had a distinctive appearance when compared to those of its competitors. While Shakespeare was at first troubled by the aesthetically unappealing two-toned rod, with increased consumer acceptance Shakespeare sought to capitalize on its appearance, deliberately marketing it in its natural two-toned appearance so that consumers could recognize the graphite base and solid fiberglass tip. Shakespeare denominated the rod the "Ugly Stik" and applied to the Patent and Trademark Office to register both the "Ugly Stik" mark and the two-toned appearance of the rod. The Patent and Trademark Office issued both trademarks. The mark covering the appearance of the rod claims exclusive right to market a fishing rod,

> in which the tipped portion of the shaft between the tip and the second line guide elements consist of whitish translucent material in contrast to the opaque remainder of the shaft.

United States Trademark Registration No. 1,261,786 (registered on the Principal Register). In 1989, this trademark became incontestable under 15 U.S.C. § 1065.

Silstar Corporation of America, Inc., a competing manufacturer who desired for quality purposes to market a fishing rod with a graphite base and fiberglass tip, began manufacturing such a rod through a process different from that used by Shakespeare. Because Silstar wanted to communicate to consumers the rod's graphite and fiberglass properties, Silstar left these materials with their natural color. The base and tip of its rods consequently appeared like Shakespeare's. Silstar called its rod the "Power Tip Crystal" rod. When Sil-

3

star introduced this rod in 1990, it knew that Shakespeare had a trademark for a rod with a "whitish translucent" tip and contrasting opaque base.

In response to Silstar's introduction of the Power Tip Crystal rod, Shakespeare filed this trademark infringement action. In defense, Silstar contended that Shakespeare could not claim a mark in the functional or descriptive design of the rod, arguing that even though Shakespeare's mark had become incontestable, it should be canceled by the court under 15 U.S.C. § 1119. The case was tried to the district court without a jury, and after making findings of fact, the district court agreed with Silstar that Shakespeare's mark should be canceled. See Shakespeare I, 802 F. Supp. at 1399. The court found that Shakespeare's mark was nothing more than the natural appearance of the functional features of graphite fishing rods with solid fiberglass tips and therefore concluded that Shakespeare's mark was not subject to registration. See id. at 1398-99. The court ordered the Commissioner of the Patent and Trademark Office to cancel Shakespeare's mark from the register. See id. at 1399.

On appeal we reversed, holding that the Lanham Act did not authorize courts to cancel trademark registrations because of their functionality once they had become incontestable under 15 U.S.C. § 1065. We summarized:

> [W]e hold that the district court erred in canceling, pursuant to 15 U.S.C. § 1119, the trademark held by Shakespeare on the grounds that it is functional, because that is not an authorized ground for cancellation under 15 U.S.C. § 1064. Since no other ground enumerated under § 1064 was alleged by Silstar, the mark is valid as a matter of law. We therefore reverse the district court and remand the case for further consideration of Shakespeare's statutory and common law infringement and unfair competition claims. We further instruct the district court that any inquiry into an alleged "fair use" of the clear tip must be accompanied by an analysis of the likelihood of confusion among consumers that may be created by Silstar's use of the clear tip.

Shakespeare II, 9 F.3d at 1099.

4

On remand, the district court addressed the remaining infringement issues and held that Shakespeare had failed to establish a likelihood of confusion from Silstar's clear-tipped rods and, alternatively, that Silstar had established its fair-use defense. See Shakespeare III, 906 F. Supp. at 1001. The court also concluded that Silstar had failed to establish its unclean hands defense and its counterclaims. See id.

In assessing the likelihood of confusion from Silstar's fishing rods, the district court noted that Shakespeare was not entitled to a presumption of a likelihood of confusion based on Silstar's copying of Shakespeare's Ugly Stik rod. It concluded that because Silstar had merely sought "to reproduce and utilize a functional attribute, which is unquestionably a legitimate activity," Id. at 1010, the presumption of a likelihood of confusion was not created because such a presumption arises only from an "`intent to exploit the good will created by an already registered mark.'" Id. (quoting AMP, Inc. v. Foy, 540 F.2d 1181, 1186 (4th Cir. 1976)). In finding no exploitative intent, the court reiterated several of its factual findings: that Silstar used the clear tip to demonstrate its rods' quality, not as indicating origin; that whatever attention was drawn to the clear tip served only to inform buyers of the rods' components; that Silstar's descriptive use of the clear tip was the most effective means of marketing its rods in the descriptive sense; and, that there was no alternative as effective for demonstrating to consumers the rods' components since a clear tip and opaque gray shaft are the natural colors resulting from the manufacturing process. See id.

In support of its factual finding that Silstar's Power Tip Crystal rod was not likely to be confused with Shakespeare's Ugly Stik rod, the court found that, other than color similarities of the materials themselves, Silstar's rod differed significantly in overall appearance from the Shakespeare rod and that Silstar had taken specific measures to distinguish its rod. See id. at 1011. The court noted that although both companies used the same marketing facilities, the rods were usually displayed in a way that allowed consumers readily to see the manufacturer's names, and that consumers usually inspected rods thoroughly before purchasing them. See id. The court acknowledged that the similar advertising channels and relative strength of Shakespeare's mark somewhat favored finding a likelihood of confusion. See id. at 1012-13. But, the court noted, Shakespeare's mark was not particu-

5

larly strong; rather it was descriptive with some secondary meaning on which Shakespeare's marketing had not put much emphasis. See id. at 1013. At bottom, the court concluded that while the number of factors which favored Shakespeare was greater than the number which favored Silstar, the weight of the factors favoring Silstar was significantly greater than the weight of those favoring Shakespeare. See id. at 1014. The district court thus found as a matter of fact that Shakespeare had failed to establish a likelihood of confusion, an essential element of its infringement claim. See id.

In finding alternatively that Silstar had established a fair-use defense, the district court concluded that the fair-use defense may be available even where a likelihood of confusion has been established, and that "`the strength of the plaintiff's mark and the extent of likely or actual confusion are important factors in determining whether a use is fair.'" Id. at 1015 (quoting Restatement (Third) of Unfair Competition, § 28 cmt. b (1995)). The court reiterated that it did not find Shakespeare's mark to be particularly strong, but that even if it were strong, its strength did not "outweigh Silstar's right to use the clear tip, . . . a functional attribute of these types of rods . . . as a descriptive device." Id. The court noted that Silstar acted in good faith in using the functional characteristics of the clear tip and in not seeking to use it as an identification of source. See id. at 1016. In reaching that conclusion, the court considered that the functionality and descriptiveness of Shakespeare's mark were relevant factors. See id.

This appeal followed.

II

Shakespeare first argues that as a matter of law, our earlier decision in Shakespeare II foreclosed any district court ruling based on the functional and descriptive aspects of its trademark because we held that a mark cannot be canceled on the ground that it is functional after it has become incontestable. Because the district court considered the functional and descriptive aspects of Shakespeare's trademark in determining that Silstar's actions were in good faith and constituted fair use, the district court's findings must, Shakespeare contends, be reversed. This argument raises a legal question which we review de novo.

6

In Shakespeare II, we held that the district court erred in canceling Shakespeare's trademark pursuant to 15 U.S.C. § 1119 on the grounds that it was functional. We concluded that 15 U.S.C.§ 1064 does not include functionality as a ground for cancellation. See Shakespeare II, 9 F.3d at 1097. In reaching our conclusion, however, we considered functionality only as it might be a ground for canceling incontestable marks, observing that "since no other ground enumerated under § 1064 was alleged by Silstar, the mark is valid as a matter of law." Id. at 1099. Having disposed of that one issue, we remanded the case to the district court for consideration of the other issues in Shakespeare's infringement claim. See id. Under our holding, therefore, the district court could not on remand cancel Shakespeare's registration or find it otherwise invalid because of functionality. But in delimiting the court's power under 15 U.S.C. § 1119 and saying that the mark was valid as a matter of law, we did not hold that Shakespeare had proved the other elements of its trademark infringement case. Nor did we say that functionality or descriptiveness were irrelevant to other issues before the district court on remand. Accordingly, to the extent that either functionality or descriptiveness is relevant in considering either Shakespeare's prima facie case for infringement or Silstar's fair-use defense, the district court did not err.*

On remand, the district court considered the functionality and descriptiveness of Shakespeare's mark in determining (1) whether Silstar's copying Shakespeare's mark entitled Shakespeare to a presumption of a likelihood of confusion; (2) whether there was in fact a likelihood of confusion; and (3) whether Silstar established its fair-

_____

*While functionality and descriptiveness are distinct concepts in trademark law, they have the same legal effect on the issues before us. Silstar claims that its gray-based and clear-tipped rod represents the natural appearance of graphite and fiberglass used in a relationship that takes advantage of those materials' properties, and to that extent the appearance is the product of function. It also claims that the gray base and clear tip describe to the consumer the properties of those materials that make them suitable for their function, and in that sense the rod's appearance is descriptive. Whether the essence of Silstar's position -- and the district court's opinion which agreed with Silstar-- is that it was acting in good faith because of its rods' functionality or their descriptiveness need not be resolved, because, as we discuss below, either would supply a factual basis for a finding of good faith or fair use.

7

use defense. We turn to the question of whether functionality or descriptiveness is relevant to these issues.

A

The presumption that intentionally copying someone else's mark causes a likelihood of confusion arises from the recognition that one who tries to deceive the public should hardly be allowed to prove that the public has not in fact been deceived. See Osem Foods Indus. v. Sherwood Foods, Inc., 917 F.2d 161, 165 (4th Cir. 1990). But that presumption arises only when the copier "inten[ds] to exploit the good will created by an already registered trademark." AMP, 540 F.2d at 1186 (emphasis added). "A likelihood of confusion should not be inferred from proof that the actor intentionally copied the other's designation if the actor acted in good faith under circumstances that do not otherwise indicate an intent to cause confusion or to deceive." Restatement (Third) of Unfair Competition, § 22(2) (1995) (emphasis added).

The district court in this case was thus required to determine whether Silstar intended to deceive the public and exploit Shakespeare's goodwill. Conversely, it was free to consider as a factual matter, whether Silstar copied Shakespeare's rod with the intent of reproducing and using a functional aspect, which it was legally entitled to do. See Bonita Boats, Inc. v. Thundercraft Boats, Inc., 489 U.S. 141, 164 (1989) (reproducing a functional attribute is a legitimate competitive activity); Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 857-58 n.20 (1982) ("[b]y establishing . . . that uniform capsule colors served a functional purpose, the petitioners offered a legitimate reason for producing an imitative product"); see also Restatement (Third) of Unfair Competition, § 22 cmt. c ("If the actor reasonably believes that the other's designation is functional . . ., proof that the actor intentionally copied the other's designation does not justify an inference of confusion"). Accordingly, when the district court considered the functional and descriptive aspects of Shakespeare's mark in determining whether to presume a likelihood of confusion, it considered relevant factors.

B

Similarly, the district court considered the functional and descriptive aspects of Shakespeare's marks in determining whether Silstar's

8

competing clear-tipped fishing rod was in fact likely to confuse. In determining the likelihood of confusion, the court may consider -- indeed, should consider -- the mark's strength. See Lonestar Steak-house & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 934-35 (4th Cir. 1995). Marks may be, in ascending order of strength, generic, descriptive, suggestive, or arbitrary. See id. at 933.

In this case when considering the strength of Shakespeare's mark, the court concluded that the mark was primarily descriptive, although it had some secondary meaning. See Shakespeare III, 906 F. Supp. at 1013. The court found that the mark carries very little secondary meaning since the functional aspects of the clear tip, rather than its source-identifying power, were emphasized in marketing. See id. In considering the functional or descriptive nature of the mark in this context, the court was simply following the factors already established earlier by this court. See Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 127 (4th Cir. 1990) (including strength of mark as a factor courts should consider); Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984) (same).

C

Finally, in resolving whether Silstar established a fair-use defense, the district court considered the functional and descriptive aspects of Shakespeare's mark. It concluded that functionality was a relevant factor where a party "in good faith and not as a means of source-identification [seeks] . . . to use a functional feature of a product which another party . . . has registered as a trademark." Shakespeare III, 906 F. Supp. at 1016. The district court had also previously noted that a clear-tip on a fishing rod demonstrates that the tip has strength because of its solid fiberglass construction. See Shakespeare I, 802 F. Supp. at 1391. The clarity was found to be a natural characteristic of solid fiberglass used in fishing rod tips, see id., and such tips are undoubtedly functional. Thus, clarity is merely descriptive of a functional aspect of the rod. While such descriptive features would not normally be entitled to any trademark protection, the district court correctly noted that the mark had acquired some secondary meaning, entitling it to protection. But because clarity was a natural and descriptive characteristic of the rod's functional tip, the district court concluded that Silstar did not act in bad faith, but had a legitimate

9

non-predatory reason for giving its solid fiberglass tips a clear appearance. See Shakespeare III, 906 F. Supp. at 1010, 1015-16.

In Inwood Labs, the Supreme Court concluded that color could serve an identifying function, which gave a good faith reason for imitation. See 456 U.S. at 857-58 n.20. There, the court accepted the district court's conclusions that a drug's color could function to identify its therapeutic affects. Id. Similarly, the district court, in deciding whether Silstar acted in good faith, considered clarity of fishing rod tips as identifying or describing the rod's construction. See Shakespeare III, 906 F. Supp. at 1015-16. To identify the rods' construction is a legitimate, nonpredatory purpose which tends to show a good-faith motivation for copying, which is an element of the fair-use defense. Identifying the clear tip's functional and descriptive nature was thus relevant to the court's inquiry.

III

Shakespeare next challenges the district court's conclusion that Silstar's sale of its Power Tip Crystal rods would not likely cause confusion with Shakespeare's Ugly Stik rods. Shakespeare contends that the district court (1) improperly denied it the presumption of a likelihood of confusion that flows from intentional copying and (2) clearly erred in finding as a fact that Shakespeare had not established a likelihood of confusion. We will address these points in order.

A

Whether Shakespeare was entitled to a presumption of a likelihood of confusion involves a question of law which we review de novo. Because the district court found that Silstar "had knowledge of, and essentially copied, Shakespeare's trademark," Shakespeare III, 906 F. Supp. at 1010, Shakespeare argues that the law of this circuit requires the court to have presumed that confusion was likely.

In Osem Food, we recognized that a presumption of a likelihood of confusion is appropriate in some circumstances:

> When a newcomer to the market copies a competitor's trade dress, its intent must be to benefit from the goodwill

10

of the competitor's customers by getting them to believe that the new product is either the same, or originates from the same source as the product whose trade dress was copied. Logic requires, no less than the presumption of secondary meaning from copying, that from such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion.

917 F.2d at 165. Our cases make clear, however, that that presumption arises only where the intentional copying is motivated by an "intent to exploit the good will created by an already registered trademark," AMP, 540 F.2d at 1186. We noted explicitly in Osem Food that a court should "require one who tries to deceive customers to prove that they have not been deceived." 917 F.2d at 165 (emphasis added); see also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) ("[w]here . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion") (emphasis added); Allen v. Standard Crankshaft & Hydraulic Co., 323 F.2d 29, 36 (4th Cir. 1963) ("an apparent motive of the junior party to create confusion and to give to his goods a superficial appearance of being those of the senior party is properly considered"). In contrast, where the owner of the junior mark essentially copies a mark with no intent to exploit the senior mark's goodwill -- such as to describe a functional aspect of the product -- the party claiming infringement must prove the likelihood of confusion without the benefit of a presumption. See Restatement (Third) of Unfair Competition, § 22(2) (1995) ("[a] likelihood of confusion should not be inferred from proof that the actor intentionally copied the other's designation if the actor acted in good faith under circumstances that do not otherwise indicate an intent to cause confusion or to deceive"). Thus, Shakespeare is entitled to the presumption of a likelihood of confusion only if Silstar's intent is to free-ride on Shakespeare's goodwill.

The district court concluded as a factual matter that "it is equally clear from the evidence presented at trial that Silstar's intent was not, and is not, to capitalize on, or otherwise exploit, Shakespeare's trademark." Shakespeare III, 906 F. Supp. at 1010. Indeed, although Silstar used a clear tip, the district court concluded that it had taken care to distinguish the overall appearance of its rods so consumers would not

11

confuse Silstar's Power Tip Crystal rod for Shakespeare's Ugly Stik rod. See id. at 1011. Although we readily acknowledge that a fact-finder could have concluded that Silstar intended to free-ride on Shakespeare's goodwill, we cannot conclude that the district court's contrary finding is clearly erroneous.

Even if Shakespeare were entitled to the presumption, the district court found that Silstar had introduced sufficient evidence to rebut the presumption (returning the burden of persuasion to Shakespeare) and to entitle the court to find that there was no likelihood of confusion. See id. at 1011 n.17. Again, we cannot conclude that the district court was clearly erroneous in finding that Silstar had presented enough evidence to rebut a presumption of the likelihood of confusion.

B

Shakespeare contends further that, in any event, the court clearly erred in holding that it had not factually established a likelihood of confusion. Whether Silstar's Power Tip Crystal rod is likely to cause confusion with Shakespeare's Ugly Stik rod, so that an appreciable number of the public attribute Silstar's product to Shakespeare, is "an inherently factual issue that depends on the facts and circumstances in each case." Lonestar Steak House, 43 F.3d at 933 (internal quotations omitted). In resolving that factual question, a district court must consider any factor relevant to whether confusion is likely between the two marks. See Durox Co. v. Duron Paint Mfg. Co., 320 F.2d 882, 885 (4th Cir. 1963). We review the district court's findings for clear error. See Pizzeria Uno, 747 F.2d at 1526.

We have, over the course of several cases, developed factors for courts to consider in determining the likelihood of confusion. They include (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods or services which the marks identify; (4) the similarity of the facilities used by the parties in conducting their businesses; (5) the similarity of advertising used by the parties; (6) the defendant's intent in using the mark; (7) actual confusion; (8) the proximity of the products as they are actually sold; (9) the probability that the senior mark owner will "bridge the gap" by entering the defendant's market; (10) the quality of the defendant's product in relationship to the quality of the senior

12

mark owner's product; and (11) the sophistication of the buyers. <u>See</u>, e.g., <u>Perini</u>, 915 F.2d at 127; <u>Pizzeria Uno</u>, 747 F.2d at 1527. The list of these factors, however, is neither exhaustive nor exclusive, and some of the factors may not always be relevant or equally emphasized in each case. <u>See Anheuser-Busch Inc. v. L & L Wings, Inc</u>, 962 F.2d 316, 320 (4th Cir. 1992); <u>Durox</u>, 320 F.2d at 885. We articulate them to focus an inquiry that must be tailored to the factual circumstances of each case.

In resolving this case, the district court applied each of the <u>Pizzeria Uno</u>/<u>Perini</u> factors, concluding that while a larger number of factors favored Shakespeare, the more relevant and weighty factors favored Silstar. Thus the court found that (1) the mark's strength, which somewhat favored Shakespeare, nevertheless had little power in identifying its source, <u>see Shakespeare III</u>, 906 F. Supp. at 1012-13; (2) the marks' similarity was largely negated by overall appearances of the rods and the buyers' sophistication, <u>see id.</u> at 1011; (3) the fishing rods were found to differ in overall appearance, <u>see id.</u>; (4) though Shakespeare and Silstar used similar facilities, the sophistication of buyers and the marketing of the rods at eye level negated the possible confusion that might result, <u>see id.</u>; (5) although the companies used similar advertising media, little emphasis was placed on the tip as identifying Shakespeare, and the sophistication of buyers negated any confusion, <u>see id.</u> at 1012; (6) Silstar's intent did nothing to establish the likelihood <u>vel non</u> of confusion, <u>see id.</u> at 1012 n.21; (7) actual confusion, even though favoring Silstar, was of limited importance because significant distribution of Silstar rods had been prevented by preliminary injunction, <u>see id.</u>; (8) although the products were marketed very close to one another, the overall appearance and sophistication of buyers negated any confusion, <u>see id.</u> at 1012; (9) "bridging the gap" was of no relevance since the two companies were already competitors, <u>see id.</u> at 1012 n.21; (10) since the quality of the products was almost identical, a comparison was not helpful, <u>see id.</u>; (11) the sophistication of buyers, how they examined the rods and what inspection they did before buying, strongly favored Silstar, <u>see id.</u> at 1011-13. We can find no clear error in the district court's conclusions. Each relevant factor was considered and the weight accorded to each factor was reasonably defended.

IV

Finally, Shakespeare contends that (1) because it established a likelihood of confusion, the district court should not, as a matter of law, have considered Silstar's fair-use defense, and (2) in any event the court clearly erred in finding as a matter of fact that Silstar's use of the clear tip was fair.

A

To maintain its argument that a finding of a likelihood of confusion legally precludes consideration of the fair-use defense, Shakespeare relies on the district court decision in Dayton Progress Corp. v. Lane Punch Corp., 12 U.S.P.Q.2d 1695 (W.D.N.C. 1989), and our review of the same case, Dayton Progress Corp. v. Lane Punch Corp., 917 F.2d 836 (4th Cir. 1990). We do not agree, however, that these decisions support Shakespeare's legal position.

The district court in Dayton Progress concluded that the infringer's use of Dayton's product "was not undertaken in good faith and was not intended by [the infringer] as a non-trademark use" of the product. 12 U.S.P.Q.2d at 1708. The court concluded, therefore, that the infringer could not rely on the defense of fair use. See id. The court did not conclude, however, that the likelihood of confusion precluded the fair-use defense; rather its finding of bad faith precluded use of the defense. On appeal, we so understood the district court's decision, observing:

> To establish a fair use defense for these [products], [the infringer] must prove that [the products] are used "fairly and in good faith" only to describe the punches and that the infringing mark is not used as a trademark. Here, the district court found that [the infringer's] adoption and use of [the marks] was not in good faith.

Dayton Progress, 917 F.2d at 840 (citations omitted). Because we concluded that the district court's finding of bad faith was not clearly erroneous, we affirmed the district court's rejection of a fair-use defense. See id. We did not, however, hold that a finding of a likeli-

14

hood of confusion <u>per se</u> precludes consideration of the fair-use defense.

Beside the fact that our prior cases do not support Shakespeare's legal argument, it defies logic to argue that a defense may not be asserted in the only situation where it even becomes relevant. If a fair-use defense is not to be considered when there is a likelihood of confusion, then it is never to be considered. The fair-use defense comes into play only when infringement -- including a likelihood of confusion -- has been established. A defense which can be considered only when the <u>prima facie</u> case has failed is no defense at all. While it is true that <u>to the degree</u> that confusion is likely, a use is less likely to be found fair, it does not follow that a determination of likely confusion precludes considering the fairness of use. The district court correctly followed our mandate in <u>Shakespeare II</u> that "any inquiry into an alleged `fair use' of the clear tip must be accompanied by an analysis of the likelihood of confusion among consumers that may be created by Silstar's use of the clear tip." 9 F.3d at 1099.

B

In considering Silstar's fair-use defense, the district court found as a fact that Silstar had acted in good faith. The court found expressly that Silstar's use of a clear tip was to take advantage of its functional and descriptive aspects and not "to use the clear tip as [identifying] a source of origin of the rods." <u>Shakespeare I</u>, 802 F. Supp. at 1393. The court continued that "Silstar does not seek to use the clear tip on the Power Tip Crystal rod in a trademark sense" but only in its "descriptive sense." <u>Id.</u> at 1396. The district court concluded:

> There is no indication that Silstar's attempt to utilize the clear tip is unfair or in bad faith.

* * *

> In this case, there is no alternative design to Shakespeare's mark which would be as effective in communicating to consumers the fact that the rod is made of a graphite base and a solid fiberglass tip since the clear tip and the

15

> opaque base represent the natural colors of the graphite and
> the fiberglass resin which compose the rod.

Id. at 1396, 1398. The court summarized that Silstar sought "in good
faith and not as a means of source-identification, to use a functional
feature of a product" which Shakespeare had registered as a mark.
Shakespeare III, 906 F. Supp. at 1016.

We cannot conclude that any of these factual findings of the district
court are clearly erroneous.

Accordingly, the judgment of the district court is

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

As did the district court before it, the majority errs in failing to
apply this circuit's presumption of confusion to Silstar's deliberate
copying of the clear tip and opaque base on Shakespeare's "Ugly
Stik" fishing rods. Shakespeare maintains this color configuration as
a registered trademark. Both the majority and the district court recog-
nize that "Silstar had knowledge of, and essentially copied, Shake-
speare's trademark." Slip op. at 14; Shakespeare Co. v. Silstar Corp.
of America, Inc., 906 F. Supp. 997, 1010 (D.S.C. 1995). With that
acknowledgement, the majority should then proceed to apply the
mandate of Osem Food Industries v. Sherwood Foods, Inc., 917 F.2d
161 (4th Cir. 1990):

> When a newcomer to the market copies a competitor's trade
> dress, its intent must be to benefit from the goodwill of the
> competitor's customers by getting them to believe that the
> new product is either the same, or originates from the same
> source as the product whose trade dress was copied. Logic
> requires, no less than the presumption of secondary meaning
> from copying, that from such intentional copying arises a
> presumption that the newcomer is successful and that there
> is a likelihood of confusion.

16

917 F.2d at 165 (emphasis added). It is patent that the majority simply declines to read the phrase "must be" in the above quotation from Osem Food. And it can point to no precedent in this circuit requiring a showing of something more than intentional copying before the presumption arises.* It is thus my opinion that our precedent entitles Shakespeare to a presumption of likelihood of confusion.

Had the district court properly applied this presumption, its findings of fact may well have been altered. We cannot speculate as to what those findings would have been had it employed the correct legal standard. Thus, the case should be remanded for such an examination.

With regard to Silstar's fair-use defense, I do not believe such a defense is viable if a likelihood of confusion is established. The majority would allow a fair-use defense even when there is a likelihood of confusion, and states that it "defies logic" to hold otherwise. Slip op. at 15. I disagree. A leading commentator has explained the logical relationship between fair use and likelihood of confusion as follows: "The better view is that it is inconsistent to find both likely confusion and a fair use. Rather, `fair use' should be viewed as merely one type of use which is not likely to cause confusion and hence is a `defense' only in that sense." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:47 (4th ed. 1996).

The majority's holding would place this circuit in the minority of courts that permit a fair-use defense even if a likelihood of confusion exists. See 1 McCarthy, supra, § 11:47 n.2 (citing cases allowing fair-use defense even when likely confusion shown). I do not believe such a departure is warranted, or even permissible under circuit precedent.

_____

*The majority refers to several cases allowing a presumption of confusion when there has been proof of intent to exploit the good will created by an already registered trademark. Slip op. at 10-11. These cases, however, do not directly address the effect of intentional copying and, at any rate, do not hold that intent to exploit is the only means of establishing a likelihood of confusion.

17

In Dayton Progress Corp. v. Lane Punch Corp., 917 F.2d 836 (4th Cir. 1990), we affirmed a district court which, after holding that a likelihood of confusion existed, held that "[defendant] cannot now rely on the defense of `fair use' to justify its use of [plaintiff's] triliteral product designators." Dayton Progress Corp. v. Lane Punch Corp., 12 U.S.P.Q.2d 1695, 1708 (W.D.N.C. 1989). Although the majority states that the district court's finding of bad faith, rather than its finding of likelihood of confusion, precluded the fair-use defense in Dayton Progress, that statement by the majority is hardly accurate because the Dayton Progress district court's finding of bad faith was based on the defendant's exact copying and identical use of the plaintiff's product. 12 U.S.P.Q.2d at 1708. On appeal, we concluded that the district court's finding of bad faith was not clearly erroneous, and hence we accepted the district court's factual basis for that determination. Dayton Progress, 917 F.2d at 840. Read in conjunction with the district court's decision, as it must be, our Dayton Progress opinion supports the position that it is inconsistent to find both a likelihood of confusion and a legitimate fair-use defense when intentional copying has occurred.

Thus, the majority opinion adopts the minority view of the authorities, that a fair-use defense is available even in the face of intentional copying, and declines to follow the circuit precedent of Dayton Progress.

Finally, I should add that the penultimate rationale in the majority opinion, slip op. at 16, is:

> The [district] court summarized that Silstar sought "in good faith and not as a means of source-identification, to use a functional feature of a product" which Shakespeare had registered as a mark. Shakespeare III, 906 F.Supp. at 1016.

While the majority concludes that that factfinding is not clearly erroneous, in my opinion it is inherently incredible.

Accordingly, I would vacate the judgment of the district court and remand this case for the district court to make its factual findings after applying the presumption of likelihood of confusion. I would also

18

require the district court to correctly apply the rule with respect to a fair-use defense, as I have discussed above.

19