**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

ACME PAD CORPORATION,
          *Plaintiff-Appellee,*

v.

WARM PRODUCTS, INCORPORATED,
d/b/a The Warm Company,
          *Defendant-Appellant,*

and

MERCANTILE BANK; SUNTRUST BANK;
BANK OF AMERICA, NA; ALLFIRST
BANK,
          *Garnishees.*

No. 00-2319

ACME PAD CORPORATION,
          *Plaintiff-Appellant,*

v.

WARM PRODUCTS, INCORPORATED,
d/b/a The Warm Company,
          *Defendant-Appellee,*

and

MERCANTILE BANK; SUNTRUST BANK;
BANK OF AMERICA, NA; ALLFIRST
BANK,
          *Garnishees.*

No. 00-2372

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-98-2830-S)

Submitted: December 28, 2001

Decided: January 24, 2002

Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**COUNSEL**

J. Stephen Simms, W. Charles Bailey, Jr., GREBER & SIMMS, Baltimore, Maryland, for Appellant. Benjamin Rosenberg, Timothy M. Boucher, Shawn J. Sefret, Lynn E. Ricciardella, ROSENBERG, PROUTT, FUNK & GREENBERG, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Warm Products (Warm) is a distributor of wholesale products, including cotton batting marketed under the name "Warm & Natural" that is used by quilt makers and in other craft applications. From 1991 until this litigation was initiated, Warm purchased the product it marketed as Warm & Natural exclusively from Acme Pad (Acme). During this time, Warm's demand for the product increased significantly, from an initial volume of approximately 24,000 yards of product in 1991, to total orders of over one million yards in 1997. Warm became concerned Acme was incapable of continuing to increase its manufac-

turing capacity to meet the demand and began considering the purchase of its own manufacturing facility. Warm's President, Jim Chumbley, and Acme's President, Gary Cohen, discussed alternatives to address this concern but never reached an agreement. In March 1998, Chumbley advised Cohen that Warm was seeking to establish its own manufacturing capacity and forwarded a proposed transition agreement that would compensate Acme over a three year period, based upon the amount of cotton batting manufactured. This agreement was never finalized.

On August 4, 1998, Chumbley informed Cohen that Warm had decided to purchase a manufacturing facility in South Carolina, but because the plant would not be ready for full production for at least a year, Warm would continue to purchase product from Acme as before. Chumbley also advised Cohen the proposed transition agreement was still open and Cohen should consider it. After the phone call, Cohen remarked Chumbley was going to become his biggest competitor and decided to suspend shipments of product to Warm. At that time, Warm had two pending purchase orders with Acme for over 220,000 yards of Warm & Natural and outstanding invoices totaling over $350,000 it had not paid.

Subsequently, Cohen initiated discussions and plans to market the product under Acme's own brand name, "Perfect Cotton." As this litigation was initiated and in its early stages, Acme placed advertisements in quilting magazines and sent promotional materials to prospective customers stating "[t]he exact material you've grown to love as Warm & Natural by the Warm Company is now packaged by Acme Pad Corporation as Perfect Cotton)." Several customers of Warm received these advertisements and mailings. Acme also contacted several of Warm's customers and informed them that it now manufactured the product sold by Warm as Warm & Natural, that Acme no longer supplied the product to Warm, and that Warm might not be able to supply Warm & Natural. These actions occurred during the time of year when Warm's sales of Warm & Natural would normally begin to significantly increase.

On August 14, 1998, Acme demanded that Warm provide assurances of adequate security of payment of the outstanding invoices and stated it was suspending shipments under the two pending purchase

orders until those assurances were received. On August 17, 1998, Acme filed the instant action, alleging breach of contract by Warm and unjust enrichment based upon Warm's failure to pay the outstanding invoices. On September 11, 1998, Warm replied to Acme's demand for assurances, offering to bring all invoices current to sixty days, which was the normal payment term on Acme's invoices, but stating that no other assurances were reasonably necessary in light of the parties' six year course of dealing. Acme stated Warm's response was inadequate and refused to ship the goods ordered under the two purchase orders.

In its second amended answer and counterclaims, Warm asserted causes of action for breach of contract based upon Acme's failure to ship the product ordered under the two pending purchase orders, misappropriation of trade secrets, federal unfair competition, federal trademark infringement, state trademark infringement and unfair competition, common law unfair competition, and tortious interference with contracts.

The district court granted partial summary judgment on January 18, 2000. In its judgment, the court held that Acme could recover for the goods it had delivered that were the subject of unpaid invoices and that Warm was entitled to damages for Acme's breach of contract on the two outstanding purchase orders. The court also dismissed Warm's counterclaims of trademark infringement and federal unfair competition.

At the beginning of trial, the district court dismissed Warm's tortious interference with contracts claim. After the court granted judgment as a matter of law to Acme on Warm's common law unfair competition and misappropriation of trade secrets claims, the jury determined that payment on the outstanding invoices was due sixty days after the date of the invoice and that Warm sustained damages from Acme's failure to deliver in the amount of $445,462.06. The district court offset this sum by the amount Warm owed Acme on the outstanding invoices plus prejudgment interest and entered judgment in favor of Warm in the amount $48,483.34. Warm timely appealed and Acme cross-appealed.

On joint motion of the parties, we have decided this case without oral argument. After a review of the briefs and joint appendix, we find

error in two rulings by the district court requiring us to vacate in part and remand for further proceedings. We affirm all other aspects of the court's order.

First, the district court, in considering Warm's motion for summary judgment, sua sponte dismissed Warm's trademark and unfair competition claims under Fed. R. Civ. P. 12(b)(6). Warm contends the court failed to apply the proper legal standard when it evaluated Warm's trademark and unfair competition claims by assessing solely whether Acme's advertising for Perfect Cotton was literally true, without considering the confusing and misleading nature of Acme's statements.

In ruling on the unfair competition claim, the district court held:

> As to the unfair competition/trademark claims, however, there is simply no issue for trial, as the statements made by Acme in marketing Perfect Cotton were perfectly true and not misleading, even if some customers might have been confused by them. The fact of the matter is that Perfect Cotton *is* exactly the same product that people have come to know and love as Warm and Natural, and it is also literally true that Acme now packages that material as Perfect Cotton. It might well be said that some customers were confused, despite the literalness and truthfulness of the statements, but it is impossible to make a fool-proof statement, even if true, that will not confuse somebody in the consuming public. Thus, customers could not reasonably be confused, and there simply was nothing false or misleading or otherwise constituting any form of misrepresentation as to the product. Without falsity, the Lanham Act is not violated.

(emphasis in original).

We review a district court's dismissal under Rule 12(b)(6) de novo. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The evidence is considered in the light most favorable to the nonmoving party, and all well pleaded allegations are accepted as true. *Id.* The Supreme Court has held that "[t]he Lanham Act provides national protection of trademarks in order to secure to the owner of the mark

the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985). Subsequent decisions have recognized that the protections of the Act go beyond registered trademarks. *See TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 121 S. Ct. 1255, 1259 (2001) (trade dress protected under § 43); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000) (recognizing potential Lanham Act protection of product design); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) (discussing broad coverage of § 43(a) protections). We have held that "[i]t is well established that the test for unfair competition claims under section 43(a) of the Lanham Act is whether there is a likelihood of confusion." *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 (4th Cir. 1992).

In considering whether a likelihood of confusion exists, we have noted this is "an 'inherently factual' issue," and prescribed a seven factor test for use by district courts. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922 (4th Cir. 1995). As Warm correctly notes, the district court did not explicitly discuss any of the factors. Moreover, while the court's statement that "it is impossible to make a fool-proof statement, even if true, that will not confuse somebody in the consuming public," is correct, we conclude this statement affords inadequate weight to the purposes that animate § 43(a) of the Lanham Act. Warm submitted uncontroverted evidence of actual confusion, not just of "somebody in the consuming public," but of its customers. *See Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 660 (4th Cir. 1996) ("evidence of actual customer confusion 'is patently the best evidence of likelihood of confusion'"). Moreover, the district court explicitly found Acme acted in bad faith, evincing an intent to punish Warm, from which an intent to deceive the public in capturing market share can be presumed. *See Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 239-41 (4th Cir. 1997). Finally, the district court's opinion fails to address Warm's claim of trade dress infringement, or consider that Acme's statements, while true, arguably attempt to appropriate the goodwill Warm had established through its Warm and Natural product by associating Acme's new Perfect Cotton with that product. We therefore conclude the court improperly dismissed Warm's fed-

eral unfair competition claim under Rule 12(b)(6), vacate this aspect of the court's order, and remand for further proceedings.

Second, the court dismissed Warm's counterclaim that alleged the tort of interference with contract because the claim was not included in the pretrial order. A pretrial order "should be construed liberally 'to cover any of the legal or factual theories that might be embraced by [its] language.'" *Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 784 (4th Cir. 1997). Under this standard, we find Warm included language asserting a claim of tortious interference with contract. The following appears in Warm's statement of facts in support of its counterclaims:

> Acme has further represented to potential customers at trade shows and in telephone conversations that it is the only manufacturer in the world capable of making Warm & Natural® and that Warm would be unable to provide the product at some point in the future.

> Acme also used the customer and pricing lists provided by Warm to contact vendors and customers to take business that those vendors and customers have previously done with Warm and to interfere with Warm's contracts with those customers.

While Warm did not specifically include tortious interference with contract among its counterclaims listed in the pretrial order, the order stated that "Acme's misleading discussions with purchasers of Warm & Natural and its representations that Warm would be unable to provide the product constitute tortious interference with contract," in the discussion of the legal theories in support of Warm's counterclaims. We conclude the pretrial order included sufficient language to embrace a theory of tortious interference with contract.

We also conclude this error is not harmless. On the present record, it is not possible to forecast what evidence Warm may have produced at trial if the district court had not precluded its presentation of evidence on this claim. The record in this appeal includes only portions of deposition testimony and a very limited portion of the documentary evidence produced in discovery. That evidence, however, included declarations of Warm's customers who were contacted by Acme as

prospective purchasers of Acme's competing product. These declarations are primarily focused on the alleged misleading nature of Acme's communications and do not discuss any contracts between the customers and Warm. It cannot be said, however, that such evidence did not exist, and Warm should have been allowed the opportunity to present that evidence to the jury. We therefore vacate this aspect of the district court's order and remand for further proceedings.

We have carefully considered the parties' remaining assertions of error and find them to be without merit. Accordingly, we deny Acme's motion for sanctions, vacate the district court's order dismissing Warm's federal unfair competition counterclaim under Fed. R. Civ. P. 12(b)(6), vacate the district court's dismissal of Warm's tortious interference with contracts claim, and remand these claims for further consideration. We affirm the judgment of the district court in all other respects.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*